The STATE of Texas, Appellant,

v.

Gary William WARNER, Appellee.

No. 01–95–00753–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 22, 1995.

Discretionary Review Refused
April 10, 1996.

John B. Holmes, Calvin A. Hartman, Sheila Wollam, Houston, for Appellant.

Laine D. Lindsey, Houston, for Appellee.

Before TAFT, COHEN and HEDGES, JJ.

## OPINION

TAFT, Justice.

■ In this case, the State appeals and asks us to determine whether the habitual offender provision of section 12.42(d) of the Penal Code applies when a defendant who has been convicted of two or more prior felony offenses is subsequently convicted of a state jail felony. TEX.PENAL CODE ANN. § 12.42(d) (Vernon 1994). We hold that it does not.

### Facts

Appellee was charged by felony information with the primary offense of possession of cocaine weighing less than one gram. TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (Vernon Supp.1995). The felony information contained two enhancement paragraphs, alleging that appellee had two prior felony convictions for robbery by assault and theft. Appellee pled guilty to the primary allegation, and "true" to the enhancement paragraphs. The trial court convicted appellee of a state jail felony and sentenced him to two-years confinement in a state jail facility, probated for five years with the condition that appellee serve one year in state jail.

### Enhancement of State Jail Felonies

In its sole point of error, the State claims that the sentence imposed by the trial court is illegal. *See* TEX.CODE CRIM.P.ANN. art. 44.01(b) (Vernon Supp.1995) (allowing State to appeal a sentence on the ground it is illegal). More specifically, the State contends that section 12.42(d) of the Texas Penal Code (the enhancement provision for habitual offenders) applies when, as in this case, an individual: (1) is charged and convicted of a state jail felony in which no deadly weapon was used; and (2) has been twice previously convicted of felony offenses which are not state jail offenses and each enhancement offense occurred prior to the primary offense in sequential order.

TEX.PENAL CODE ANN. § 12.42(d) (Vernon 1994) provides:

If it is shown on the trial of *a felony* offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the institutional division of the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

(Emphasis added.)

■ The State argues that "a felony" in section 12.42(d) encompasses all state jail felonies by simple substitution of the statutory definition of the term "felony," which now includes state jail felonies. Appellee relies upon this Court's opinion in *State v. Mancuso,* 903 S.W.2d 386 (Tex.App.—Houston [1st Dist.] 1995, pet. granted) for the proposition that there is an irreconcilable conflict between TEX.CODE CRIM.PROC.ANN. art. 42.12, § 15 (Vernon Supp.1995) (providing automatic probation for state jail felonies) and TEX.PENAL CODE ANN. § 12.42(d) (Vernon 1994) (providing for enhancement of habitual felony offenders). The State counters *Mancuso* with *State v. Thompson,* 912 S.W.2d 244 (Tex.App.—Houston [14th Dist.], August 17, 1995, no pet. h.) (holding there is no conflict between the two provisions thereby allowing enhancement of state jail felonies under the habitual offender statute).

We agree with the State that the primary focus for resolving the issue in these cases is the statutory construction of "a felony" in section 12.42(d) (the habitual offender enhancement provision).

### A. Rules of Statutory Construction

The Texas Penal Code has its own provision for its construction:

### § 1.05. Construction of Code

(a) The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of

their terms, to promote justice and effect the objectives of the code.

(b) *Unless a different construction is required by the context, Sections 311.011, 311.012, 311.014, 311.015, and 311.021 through 311.032 of Chapter 311, Government Code (Code Construction Act), apply to the construction of this code.*

TEX.PENAL CODE ANN. § 1.05(a) & (b) (Vernon 1994) (emphasis added). Included within the code construction act sections expressly embraced in section 1.05(b) is section 311.023, which provides:

### § 311.023. Statute Construction Aids

In construing a statute, *whether or not the statute is considered ambiguous on its face*, a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

TEX.GOV'T CODE ANN. § 311.023 (Vernon 1988) (emphasis added).

The Court of Criminal Appeals in *Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App. 1991), took the position that section 311.023

constitutes an invitation to consider extratextual factors which should be declined when the statutes in question are not ambiguous. *Boykin,* 818 S.W.2d at 786 n. 4.[1] The court's rationale for limiting statutory construction to an examination of the plain language was that (1) the plain language method of statutory interpretation is of ancient origin, (2) it is the only method that does not unnecessarily invade the lawmaking province of the legislature, and (3) the courts of this and other jurisdictions, as well as many commentators, have long recognized and accepted this method as constitutionally and logically compelled. *Id.* at 786.

However, in *Lanford v. Fourteenth Court of Appeals,* 847 S.W.2d 581 (Tex.Crim.App. 1993), the Court of Criminal Appeals established an exception to the plain language rule where polar interpretations of a text produced ambiguity. *Lanford,* 847 S.W.2d at 587 (holding that when a statute read literally and in context is capable of being understood in two ways, it is classically ambiguous when the parties take polarized positions).

Thus, based on the polar interpretations presented here by the respective parties,[2] it is easy to conclude that sufficient ambiguity exists to justify examining extratextual aids, including legislative history.[3] Therefore, we may consider: (1) the object sought to be attained; (2) the circumstances under which the statute was enacted; (3) legislative history; (4) former statutory provisions; and (5) the consequences of particular constructions.

### B. Application of the Rules of Statutory Construction

#### 1. Object sought to be attained

On August 31, 1993, the Texas Punishment Standards Commission filed its Final Bill

---

1. The court in *Boykin* took the view that if the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then and *only then,* out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such *extra* textual factors as legislative history. *Boykin,* 818 S.W.2d at 785–86. The *Boykin* "plain language" approach to statutory interpretation seems to conflict with the *plain language* of section 311.023: "In construing a statute, *whether or not the statute is considered ambiguous on its face,* a court *may consider*

among other matters the: ... *legislative history;* ...." (Emphasis added.)

2. The State contends "a felony" includes state jail felonies for enhancement purposes. Appellee contends "a felony" does not include state jail felonies for enhancement purposes.

3. It is difficult to conceive of a case where the *Lanford* exception would not swallow the *Boykin* rule.

Analysis concerning Senate Bill 1067, including the state jail felony provisions. This report stated that the purpose was to revise the law so that violent offenders would serve dramatically higher proportions of their prison sentences, nonviolent offenders would be punished more economically and effectively, and the jail backlog would be addressed. *See* TEXAS PUNISHMENT STANDARDS COMMISSION, FINAL BILL ANALYSIS, Tex. S.B. 1067, 73rd Leg., R.S. 1 (1993).

### 2. Circumstances under which the statute was enacted

The conditions leading to the creation of state jail felonies are common knowledge. Texas prisons were operating under population caps as a result of an inmate lawsuit. Because prisons were not accepting inmates, county jails had become overcrowded. Prisoners released on early parole committed highly publicized violent crimes immediately after early release.

State jails and state jail felonies were advocated in order to accommodate nonviolent offenders and free up prison beds for violent offenders who would serve twice as much time before parole eligibility.

### 3. Legislative history

There are several portions of the legislative history of the enactment of state jail felonies which impact directly on the statutory construction question here:

1. In Senate Bill 1067's earliest form, there was a provision for enhancing state jail felonies to third degree felonies after two prior felony convictions. *See* TEXAS PUNISHMENT STANDARDS COMMISSION, FINAL BILL ANALYSIS, Tex. S.B. 1067, 73rd Leg., R.S. 13 (1993).

2. Representative Dan Kubiak proposed an amendment during House debate on May 6, 1993, which would have likewise allowed for the enhancement of state jail felonies to third degree felonies after two prior felony convictions. The House rejected the amendment by voting 54–28 to table it. Debate on Tex.S.B. 1067 on the floor of the House, 73rd Leg., R.S. (May 6, 1993) (statement of Representative Kubiak) (tapes available from Video Audio Services Office).

3. John Bradley, Assistant District Attorney for Williamson County, testified before the Senate Criminal Justice Committee on April 14, 1993, that criminal history alone could not be used to "graduate" out of the state jail felony punishment scheme. Hearing on Tex.S.B. 1067 Before the Senate Criminal Justice Committee, 73rd Leg., R.S. (April 14, 1993) (tapes available from Senate Staff Services Office).

4. During a hearing before the full Senate on April 20, 1993, Senator John Whitmire, author of Senate Bill 1067, was asked by Senator Ken Armbrister what the effect would be where a habitual criminal with two prior felony convictions commits a state jail felony. Senator Whitmire stated that unless the state jail felony was committed with a weapon or the person had committed a 3g [4] offense previously, he will remain a candidate for the state jail.

### 4. Former statutory provisions

A comparison of the provisions of Chapter 12 of the Texas Penal Code prior to the enactment of state jail felonies and thereafter also demonstrates a legislative intent that state jail felons not be subject to enhancement to habitual offender status.

Section 12.35 of the Texas Penal Code created state jail felonies. Subsection (a)

---

**4.** This refers to TEX.CODE CRIM.P.ANN. art. 42.12, § 3g(a) (Vernon Supp.1995) which enumerates certain crimes for which a trial court cannot give probation, *i.e.*, felonies involving violence or the use of a deadly weapon. This is the same list for which a convicted prisoner must now serve one-half rather than one-fourth of his sentence prior to being eligible for parole. *See* TEX.CODE CRIM. P.ANN. art. 42.18, § 8(b)(3) (Vernon Supp.1995).

states, "[e]xcept as provided by Subsection (c), an individual adjudged guilty of a state jail felony shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days." TEX.PENAL CODE ANN. § 12.35(a) (Vernon 1994). Subsection (c) provides increased punishment for aggravated state jail felonies. Such offenses will be punished as third degree felonies if it is shown that:

(1) a deadly weapon as defined by Section 1.07 was used or exhibited during the commission of the offense or during immediate flight following the commission of the offense, and that the individual used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited; or

(2) the individual has previously been finally convicted of any felony:

(A) listed in Section 3g(a)(1), Article 42.12, Code of Criminal procedure; or

(B) for which the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, Code of Criminal Procedure.

TEX.PENAL CODE ANN. § 12.35(c) (Vernon 1994).

Subsections (a) and (c) clearly divide state jail felonies into two distinct categories, and provide separate methods of punishment for each. For clarity, we refer to the two distinct categories as "regular state jail felonies" and "aggravated state jail felonies." The punishment for regular state jail felonies is 180 days to two years confinement in a state jail facility, while an aggravated state jail felony is punished as a third degree felony.

■ Section 12.42 of the Texas Penal Code addresses enhanced penalties for repeat and habitual felony offenders. Only in subsections (a) and (e) are state jail felonies ex-pressly mentioned. Subsection (a) reveals how state jail felonies are to be enhanced, if at all, while subsection (e) states how state jail felonies can be used to enhance other felonies. Subsection (a) provides, "[i]f it is shown on the trial of a state jail felony punishable under section 12.35(c) [aggravated state jail felonies] or on the trial of a third-degree felony that the defendant has been once before convicted of a felony, on conviction he shall be punished for a second-degree felony." TEX.PENAL CODE ANN. § 12.42(a) (Vernon 1994). Subsection (e) provides, "[a] previous conviction for a state jail felony may be used for enhancement purposes under this section only if the defendant was punished for the offense under Section 12.35(c) [aggravated state jail felonies]." *Id.* § 12.42(e).

The text of both subsections, (a) and (e), demonstrates that the only state jail felonies capable of being enhanced, or of being used to enhance prior felonies, are aggravated state jail felonies where a person has been adjudged guilty under section 12.35(c). Aggravated state jail felonies are thus equated with third degree felonies for purposes of enhancing other felony offenses and for purposes of being enhanced to a second degree felony with a prior felony conviction.[5]

At the same time that state jail felonies were being enacted, section 12.42(d) (the habitual offender enhancement provision) was also amended by way of limitation. Whereas the previous law read, "[i]f it be shown on the trial of *any* felony offense ...," subsection (d) was amended to read, "[i]f it is shown on the trial of *a* felony offense...." *See* Act approved June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3604.

The limitation of the language of 12.42(d) created by replacing "any felony offense" with "a felony offense" demonstrates a legislative intent to limit the application of the habitual offender enhancement provision. If "any felony offense" had not been amended,

---

5. We have already observed that aggravated state jail felonies are equated with third degree felo-nies for purposes of range of punishment.

it clearly would have embraced the newly created state jail felonies. While the language "a felony offense" does not, by itself, indicate a limitation, the change from "any" to "a" at the same time state jail felonies were added to the categories of felony is at least some indication that section 12.42(d) was not intended to apply to state jail felonies.

The combination of (1) the legislature's limiting the prior language of "any felony" in subsection (d), (2) the express mention of only aggravated state jail felonies in section 12.42, and (3) the inclusion of aggravated state jail felonies only in subsections (a) and (e) demonstrates a legislative intent that state jail felonies not be included within subsection (d) so as to be subject to enhancement to habitual offender status. Even aggravated state jail felonies were not intended to be enhanced pursuant to section 12.42(d). A fortiori, regular state felonies (which is the focus here) were not intended to be enhanced to habitual offender status.

### 5. Consequences of particular interpretations

A contrast of the consequences of the competing interpretations reinforces the conclusion that the legislature did not intend that state jail felonies be enhanced to habitual offender status.

If "a felony" in subsection (d) referred to any state jail felony, then subsection (d) would read as follows:

> If it is shown on the trial of a felony [including any state jail felony] offense that the defendant has previously been finally convicted of two felony [including any state jail felony] offenses, and the second previous felony....

The State overlooks the fact that substitution of the universal definition of felony in subsection (d) would logically require that it also be substituted every place the word "felony" appears in the subsection. The result would be that while subsection (e) only allows an aggravated state jail felony to be used to enhance other offenses, any state jail felony could be used to enhance to habitual offender status under subsection (d). This is not a reasonable consequence.

The argument that it is an absurd result for a person who has been convicted of multiple felonies to be given automatic probation must also be considered. First, where such an habitual offender has not been convicted of violent offenses or offenses involving the use of a deadly weapon, it is consistent with the purpose of the state jail felony for such a person to not be sent back to occupy a prison bed reserved for violent offenders.[6] Second, another part of the state jail felony enactments, TEX.CODE CRIM.P.ANN. art. 42.12, § 15(d) (Vernon Supp.1995), did provide for a form of enhanced punishment for habitual offenders:

> A judge may impose as a condition of community supervision that a defendant submit at the beginning of the period of community supervision to a term of confinement in a state jail felony facility for a term not to exceed 60 days, or 180 days if the defendant previously has been convicted of a felony, or one year if the defendant is convicted of an offense punishable as a state jail felony under Section 481.112, Health and Safety Code, *or the defendant previously has been convicted of two or more felonies....*

(Emphasis added.)

As addressed in *Mancuso*, a conflict would be presented if it were possible for habitual

---

6. A concrete example serves to drive home this point. Consider a common fact situation in which a person is arrested in possession of a very small amount of a controlled substance and has numerous prior convictions for nonviolent felonies. Under the law in effect prior to the state jail felony provisions, this person would be convicted and assessed a minimum of 25 years as an habitual offender. TEX.PENAL CODE ANN. § 12.42(d)

(Vernon 1994). Under the state jail felony law, the same person would get a state jail term of two to five years automatically probated, with the trial court having the option to give up to one year in state jail as a condition of probation up front. We believe that this is exactly the type of case which the legislature had in mind when it established state jail felonies to save precious prison beds for violent offenders.

offenders who commit a state jail felony to be subject to an automatic 25–year minimum prison sentence where TEX.CODE CRIM.P.ANN. art. 42.12, § 15(a) (Vernon Supp.1995) requires that a trial court assess an automatic two-to-five year probation for those convicted of a state jail felony.

Furthermore, we do not find *Thompson* persuasive because the Fourteenth Court of Appeals did not examine the meaning of the changes to the general enhancement provisions which occurred simultaneously with the creation of state jail felonies. For example, *Thompson* leads to the consequence that a regular state jail felony may be treated the same as an aggravated state jail felony for purposes of enhancement to habitual offender status. This conflicts with the manner in which sections 12.35 and 12.42 both differentiate clearly between the treatment of regular and aggravated state jail felonies, with the latter being treated like third degree felonies.

After applying the pertinent rules of statutory construction, we conclude that the legislature did not intend for state jail felonies to be enhanced to habitual offender status pursuant to section 12.42(d). Accordingly, the State's sole point of error is overruled.

We affirm the trial court's judgment.