**Jennifer ALLEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–97–01406–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 31, 2000.

Rehearing Overruled March 6, 2000.

---

**8.** In light of our disposition of point two, we need not address Dana's first and third points of error.

Greg Gladden, Houston, for appellant.

Barabara A. Drumheller, John B. Holmes, Houston, for State.

Panel consists of Justices WILSON, TAFT, and NUCHIA.

## OPINION

TIM TAFT, Justice.

A jury found appellant, Jennifer Allen, guilty of driving while license suspended (DWLS) and assessed punishment at 30 days in jail, probated for six months community supervision, and a $150 fine. We address: (1) whether a driver's license, which has been suspended for 90 days based upon the driver's refusal to submit to a Breathalyzer test, continues to be suspended beyond the 90 days, until that driver pays the statutorily required $100 reinstatement fee. We reverse and dismiss.

### Facts

On November 27, 1996, appellant was arrested in Tyler for suspicion of driving while intoxicated (DWI). When she was taken to the police station, she refused to take a Breathalyzer test. Appellant signed a DWI Statutory Warning that gave her notice that her driver's license would be suspended for 90 days, from January 8, 1997, until April 5, 1997.

On August 22, 1997, appellant was involved in an automobile accident. Appellant flagged down Houston Police Officer Mike Cochran to request a police report. When Officer Cochran entered appellant's license into his patrol vehicle's computer, it notified him appellant's license was suspended. Cochran asked appellant if she was aware her license was suspended. She responded that she was not. Officer Cochran confirmed his information by contacting the Accident Division of the Houston Police Department. Officer Cochran then arrested appellant for DWLS.

### Continuation of Suspension

In appellant's first and second points of error, she complains that, when she was arrested for DWLS, her license was not suspended, and therefore the trial court erred when it denied her motion for instructed verdict. In appellant's first point of error, she contends her license was not suspended because her failure to pay the statutorily required $100 reinstatement fee did not cause her license to continue to be suspended beyond the statutorily mandated 90 days. In appellant's second point of error, she argues her license was not suspended because the Department of Public Safety's (DPS) continuation of her license suspension beyond the statutorily mandated 90 days was unauthorized. The resolution of appellant's first and second points of error depends on resolution of this question: Once a person's license is suspended for refusing to give a breath specimen, does that person's failure to pay the statutorily required, license-reinstatement fee result in a continuation of the suspension until the fee is paid? This is an issue of first impression in Texas.

Chapter 724 of the Texas Transportation Code is entitled "Implied Consent." Its provisions apply to suspension of a license for refusal to submit to taking a specimen when a person is arrested for a driving offense. TEX. TRANSP. CODE ANN. § 724.002 (Vernon 1999). Under section 724.035, when a driver refuses to submit to

a police officer's taking a specimen, and that driver is 21 or older, the driver's license is suspended for 90 days.[1] TEX. TRANSP. CODE ANN. § 724.035(a) (Vernon 1999). This 90–day suspension begins 40 days after the date on which the driver either received notice of the suspension, or is considered to have received notice of suspension. TEX. TRANSP. CODE ANN. § 724.035(b) (Vernon 1999). The State argues that the 90–day period is extended by section 724.046, which requires payment of a $100 fee before a suspended license may be reinstated. Section 724.046(a) of the Texas Transportation Code provides that "[a] license suspended under this chapter may not be reinstated ... until the person whose license has been suspended pays to the department a fee of $100 in addition to any other fee required by law...." TEX. TRANSP. CODE ANN. § 724.046(a) (Vernon 1999). Appellant argues that although section 724.046(a) requires that the $100 fee be paid, a person's failure to pay the reinstatement fee does not result in a continuation of the suspension.

As in *State v. Warner*, we begin our statutory analysis by observing that the Transportation Code has its own rule guiding construction of its provisions. 915 S.W.2d 873, 874–75 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). Section 1.002 provides that "Chapter 311, Government Code (Code Construction Act), applies to the construction of each provision in this code except as otherwise expressly provided by this code." TEX. TRANSP. CODE ANN. § 1.002 (Vernon 1999). This poses a potential conflict with the leading case on statutory construction from the court of criminal appeals. *See Boykin v. State*, 818 S.W.2d 782, 786 (Tex.Crim.App.1991) (establishing the "plain language" approach that limits consideration to the text of the statute unless it is ambiguous or leads to absurd results). The Code Construction Act allows consideration of extratextual factors without requiring ambiguity in the text of the statute. *See* TEX. GOV'T CODE

ANN. § 311.023 (Vernon 1998) (allowing consideration of statutory construction aids *whether or not the statute is considered ambiguous on its face*). As in *Warner,* we again easily avoid a conflict by resorting to *Lanford v. Fourteenth Court of Appeals,* in which the court of criminal appeals eviscerated its *Boykin* rule by finding ambiguity when the parties took polar opposite interpretations of the text. *Lanford,* 847 S.W.2d 581, 587 (Tex.Crim. App.1993); *see Warner,* 915 S.W.2d at 875. Because the parties take polar opposite positions here, we are free to apply the Code Construction Act in resolving the issue.

As in *Warner,* the particular part of the Code Construction Act most pertinent to our analysis is section 311.023, which provides:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision.

TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *see Warner,* 915 S.W.2d at 875. Our primary focus is on section 724.046(a), which provides that a license suspended under Chapter 724 may not be reinstated until a $100 fee is paid. The question is whether this provision prolongs the suspension of a driver's license beyond the period provided in section 724.035(a)(1) (in this case 90 days).

---

**1.** The record reflects appellant was 21 years old.

## A. Object Sought

The predecessor to section 724.046 was first enacted in 1993 as part of an implementation of a statewide driver's license-revocation program. Former article 6701l–5 of the Texas Civil Statutes was amended to add:

(v)(1) A driver's license suspended under this Act may not be reinstated or a new license issued until the person whose driver's license has been suspended pays to the department a fee of $100 in addition to any other fee required by law. A person subject to a prohibition order issued under this Act may not obtain a driver's license after the period of prohibition has ended unless the person pays to the department a fee of $100 in addition to any other fee required by law.

(2) If a suspension or prohibition under this Act is rescinded by the department, an administrative law judge, or a court under this Act, payment of a fee under this subsection is not required for reinstatement or issuance of a driver's license.

(3) Fees paid under this subsection shall be deposited in the state treasury to the credit of the operator's and chauffeur's license fund and may be appropriated only to the department to administer this Act and Article 6687b–1, Revised Statutes.

Act of May 26, 1993, 73d Leg., R.S., ch. 886, § 9, 1993 Tex. Gen. Laws 3515, 3526–27.

From the plain language of the provision, the legislature appears to have sought the object of raising money to administer the driver's license suspension program by assessing a $100 fee, to be paid before a suspended driver's license could be reinstated. There does not appear to be an intent within this provision that driver's license suspensions be extended beyond their statutory periods so as to expose drivers who have not paid the reinstatement fee to conviction for DWLS.

## B. Circumstances Under Which Enacted

As mentioned above, the predecessor to section 724.046 was part of a comprehensive implementation of a driver's license-revocation and suspension program. Indeed, it appears that the reinstatement fee was intended to help pay the expenses for this comprehensive (and thus expensive) program.

## C. Legislative History

The legislative history to the predecessor of section 724.046(a) is found by tracking Senate Bill 1 in the 73rd Legislature in 1993. Having examined the bill analysis, and followed this bill through the legislative process, the only extratextual clue to legislative intent is found in a solitary fiscal note explaining that the reinstatement fee was to go toward paying the administrative costs of the suspensions.

The legislative history of a similar provision, for reinstatement of administratively suspended licenses enacted during the same legislative session, shows an original intent to recoup the costs of administering reinstatements. In the original Senate Bill 510, filed by Senator Mike Moncrief, the language was: "The Department by rule shall establish the fee authorized by this subsection. The fee under this subsection may not exceed an amount that is sufficient, when added to the other fees collected under this Act, to recover the actual cost to the Department of administering reinstatements under this Act." The ultimate version provided only for an amount certain ($50), but there is nothing to indicate any intent other than the original intent—to recoup costs of administering the reinstatement program. Nothing indicates an intent to create a continuing offense of DWLS for driving with an unreinstated license.

## D. Similar Provisions

Although there do not appear to have been similar prior provisions, the same

legislative session produced reinstatement fees for driver's licenses suspended for failing the intoxication test ($100), and as a result of an administrative hearing ($50). Act of May 26, 1993, 73d Leg., R.S., ch. 886, § 1, 1993 Tex. Gen. Laws 3515, 3520 (now Tex. Transp. Code Ann. § 524.051(a) (Vernon 1999), providing for $100 fee); Act of May 27, 1993, 73d Leg. R.S., ch. 790, § 26, 1993 Tex. Gen. Laws 3088, 3100 (now Tex. Transp. Code Ann. § 521.306(d) (Vernon 1999) (providing for $50 fee)).[2] As we concluded after examining the legislative history, the purpose of all of these provisions appears to have been to help defray the substantial administrative expenses of the comprehensive driver's license-revocation and suspension programs.

### E. Consequences of Particular Constructions

A consequence of construing section 724.046 as the State urges is that driver's license suspensions would cease to have a definite period. Suspension could go on for years, until a reinstatement fee was paid, or forever, if a reinstatement fee were never paid. This is contrary to another provision, passed the same day as the predecessor to section 724.046(a), in which article 6687b, section 1(6), of the Revised Civil Statutes was amended to state: "'Suspension of driver's license' means the *temporary withdrawal for a definite period of time* of a person's license or privilege to operate a motor vehicle on a public highway." Act of May 26, 1993, 73d Leg, R.S., ch. 796, § 4, 1993 Tex. Gen. Laws 3156, 3159 (former Tex.Rev.Civ. Stat. Ann. art. 6687b, § 1(6) (since repealed and codified) (emphasis added). In the recodification process by which these prior statutes in the Revised Civil Statutes were transferred to the new Transportation Code, the legislature stated its intent not to make any substantive changes in the law. Act of May 1, 1995, 74th Leg, R.S.,

ch. 165, § 25, 1995 Tex. Gen. Laws 1025, 1871. Thus, one consequence of the State's construction would be to violate the proscription against substantive changes during recodification.

Allowing driver's license suspensions to be indefinite would also be contrary to several provisions that limit suspensions to certain periods. For example, suspensions resulting from administrative hearings cannot exceed one year. *See* Tex. Transp. Code Ann. § 521.306(b) (Vernon 1999) recodified at Tex. Transp. Code Ann. § 521.312(b) (Vernon 2000) by Act of May 26, 1999, 76th Leg., R.S., ch. 1117 § 1, sec. 521.312, 1999 Tex. Gen. Laws 3988, 3994. Suspensions resulting from refusing to provide a specimen or failing an intoxication test are likewise for specified periods, not exceeding 240 days, even for repeat offenders. *See* Tex. Transp. Code Ann. § 724.035 (Vernon 1999) (refusal of test—240 days for repeat offender younger than 21 years old); Tex. Transp. Code Ann. § 524.022 (Vernon 1999) (failed intoxication test—180 days for minors who are repeat offenders and others with multiple alcohol- or drug-related enforcement contacts within the preceding five years).

A consequence of accepting appellant's construction is that it rejects both the way DPS has been reading section 724.046 and the actions DPS has taken in conformity to its reading. For example, the record in this case shows that DPS sends out notices, called "orders," informing those with suspended licenses to surrender their licenses and pay a reinstatement fee after the specified period of suspension expires in order to end the suspension of their licenses. The record also shows that DPS keeps records that reflect that a person who has not paid a reinstatement fee continues to have a suspended license. Moreover, as the arresting officer did in this case, peace officers rely on the DPS rec-

---

2. Repealed by Act of May 26, 1999, 76th Leg., R.S., ch. 1117 § 1, sec. 521.313, 1999 Tex.     Gen. Laws 3988, 3994.

ords to make DWLS arrests of those who have not paid a reinstatement fee.

There is also a legitimate law enforcement concern that persons in appellant's situation not be given a free pass to drive, even though they have not paid the fee to reinstate their suspended licenses. Under the facts of this case, we believe appellant could have been prosecuted for several violations. First, she did not forward her new Houston address to DPS within 30 days of moving (she testified that she had moved from Tyler to Houston in January of 1997, but DPS records indicated she had not notified DPS of her change of address as of December of 1997). Tex. Transp. Code Ann. § 521.054(b) (Vernon 1999).

Ordinarily, appellant could have been convicted of not having surrendered her license upon demand. Tex. Transp. Code Ann. § 521.451(4) (Vernon 2000). Unfortunately, the demand in this case was not shown to have been sent by certified mail, and DPS had no returned "green card" confirmation of receipt to show appellant had ever received notice she should surrender her license. An administrative rule directs DPS to mail a final order of suspension prior to the start of the period of suspension, stating the length of suspension and the procedure for reinstatement. 37 Tex. Admin. Code § 17.12 (1999). The record in this case shows that the order was not sent until the period of suspension was nearly over. The rule does not require certified mail, however, even though it presumes receipt of the final order on the fifth day after it is mailed. *Id.* Neither does the rule require that a demand for surrender be included in the order, though we note that the order in this case included this demand. Had appellant surrendered her license pursuant to demand, she would not have been able to display it to the arresting officer and would have been guilty of a violation. Tex. Transp. Code Ann. § 521.025(a) (Vernon 1999).

Admittedly, there appear to be gaps in the statutory and administrative rules, as well as variances among the statutes and administrative rules and the procedures employed by DPS. It appears to us that providing notice about reinstatement fees and for surrender of the license could more effectively be done in the original notice that must be given at the time of arrest, or by DPS through certified mail. This would tighten up the procedure considerably. Nevertheless, there are offenses for which appellant could have been prosecuted, even if there is no specific offense for driving while license is not reinstated after suspension, and the period of suspension has expired.

## F. Administrative Construction

As mentioned above, DPS has adopted administrative rules pursuant to section 724.003 of the Transportation Code. *See* Tex. Transp. Code Ann. § 724.003 (Vernon 1999) (directing DPS to adopt rules to administer Chapter 724). A section entitled "Reinstatement" requires a driver whose license was suspended to file an appropriate application and pay a $100 reinstatement fee. 37 Tex. Admin. Code § 17.15 (1999). Section 17.15 says nothing, however, about prolonging the suspension period. Moreover, we observe that the definition of "suspension of driver's license" refers to the meaning in the now repealed Revised Civil Statutes, article 6687b. 37 Tex. Admin. Code § 17.2 (Vernon 1999). That definition, which we examined above, was in terms of a temporary suspension for a definite period.

We note that DPS, in its order of suspension, cites only sections 724.046 and 524.051 of the Transportation Code as authority that licenses continue to be suspended until a reinstatement fee is paid. We construe these two sections here for the first time in any Texas case. In light of all this, we find little help from administrative construction in resolving the issue.

## F. Titles and Preambles

No titles or preambles are relevant to this construction.

## G. Summary

After weighing the various factors suggested by the Code Construction Act, we conclude that the legislature did not intend that section 724.046 (or sections 521.306 or 524.051) of the Transportation Code extend a driver's license suspension indefinitely beyond the period of suspension originally provided. The legislature intended only that a reinstatement fee be collected in order to help defray the substantial administrative expenses that would be incurred by the comprehensive revocation and suspension program enacted. Section 724.046 was not intended as a legislative enactment of an offense of driving while license is not reinstated.

Accordingly, we sustain appellant's first and second points of error. Our resolution of appellant's first two points of error makes it unnecessary to address the other points of error raised by appellant: (3) whether the evidence was legally sufficient to prove that appellant knew her license would continue to be suspended beyond the 90–day suspension period for failure to pay a reinstatement fee; (4) whether the trial court erred in overruling appellant's objection to the prosecutor's reference to an extraneous offense during argument; and (5) whether the trial court erred in preventing appellant from arguing that the jury had to find that appellant knew her driver's license was suspended.

### Conclusion

We reverse the judgment of the trial court, and order the case dismissed.