PD-0758-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/9/2015 3:37:28 PM
Accepted 11/9/2015 3:39:42 PM
ABEL ACOSTA
CLERK

**IN THE COURT OF CRIMINAL APPEALS OF TEXAS**

DEWAN MORGAN,            §
   APPELLANT         §
                    §
v.                       §          **No. PD-0758-15**
                    §
THE STATE OF TEXAS,      §
   APPELLEE          §

FILED IN
COURT OF CRIMINAL APPEALS

November 9, 2015

ABEL ACOSTA, CLERK

**APPELLANT'S BRIEF ON THE MERITS**

FROM THE SECOND COURT OF APPEALS AT FORT WORTH
IN CAUSE NUMBER 02-14-00231-CR
AND
FROM THE 211TH JUDICIAL DISTRICT COURT
DENTON COUNTY, TEXAS
IN CAUSE NO. F-2013-1704-C

**CHRISTOPHER ABEL**
ATTORNEY FOR APPELLANT
Bar No. 24043516
2609 Sagebrush Drive
Suite 202
Flower Mound, TX 75028
972-584-7837
972-947-3813 (fax)
chris@flowermoundcriminaldefense.com

## IDENTITY OF PARTIES & COUNSEL

Appellant……………………………………………….**DEWAN MORGAN**

                                            **CHRISTOPHER ABEL**
2609 Sagebrush Drive
Suite 202
Flower Mound, TX 75028
APPELLATE COUNSEL

                                            **DEREK ADAME**
1512 E. McKinney Street
Suite 102
Denton, TX 76209
TRIAL COUNSEL

Appellee……………………..………………………**THE STATE OF TEXAS**

                                            **PAUL JOHNSON**
Criminal District Attorney

                                            **CATHERINE LUFT**
Assistant District Attorney
Chief, Appellate Division

                                            **YAEL ZBOLON**
Assistant District Attorney
1450 E. McKinney Street
Suite 3100
Denton, TX 76209
APPELLATE COUNSEL

                                            **MICHAEL GRAVES**
**LINDSEY SHEGUIT**
Assistant District Attorneys
TRIAL COUNSEL

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ................................................................i

INDEX OF AUTHORITIES .......................................................................... iii

STATEMENT OF THE CASE..........................................................................1

STATEMENT REGARDING ORAL ARGUMENT ................................................2

ISSUES PRESENTED.....................................................................................2

### GROUND ONE:

In burglary of habitation cases, must trial and appellate courts utilize property law to determine who qualifies as the "owner" of a habitation as defined by the Penal Code?

### GROUND TWO:

To qualify as "entry without the effective consent of the owner," how much time must elapse after a victim revokes consent for her live-in boyfriend to enter her home for his forcible entry to be deemed a burglary?

STATEMENT OF THE FACTS ............................................................................2

SUMMARY OF APPELLANT'S ARGUMENTS ....................................................6

ARGUMENT ...............................................................................................7

APPELLANT'S RESPONSE TO GROUND ONE ...................................................7

APPELLANT'S RESPONSE TO GROUND TWO ..............................................13

PRAYER FOR RELIEF ...............................................................................18

CERTIFICATE OF COMPLIANCE..................................................................18

CERTIFICATE OF SERVICE ........................................................................19

# INDEX OF AUTHORITIES

**Statutes, Codes, and Rules**

Tex. Code of Crim. Pro. Sec. 36.13 ....................................................................10

Tex. Gov't. Code Sec. 311.003 .............................................................................9

Tex. Gov't. Code Sec. 311.021 (3) .....................................................................14

Tex. Gov't. Code Sec. 311.023 (4) .......................................................................7

Tex. Pen. Code Sec. 1.07 (a) (39) ......................................................................10

Tex. Pen. Code Sec. 38.01 ....................................................................................9

**Cases**

*Allen v. State*,
    11 S.W.3d 474 (Tex. App. – Houston [1st Dist.] 2000)
    Affirmed, 48 S.W.3d 775 (Tex. Crim. App. 2001) .........................................8

*Azeez v. State*,
    248 S.W.3d 182 (Tex. Crim. App. 2008) ........................................................9

*Black v. State*,
    505 S.W.2d 821 (Tex. Crim. App. 1974) ......................................................11

*Boykin v. State*,
    818 S.W.2d 782 (Tex. Crim. App. 1991) ..................................................... 7-8

*Carranza v. State*,
    960 S.W.2d 76 (Tex. Crim. App. 1998) ..........................................................9

*Dominguez v. State*,
    355 S.W.3d 918 (Tex. App. – Fort Worth 2011, pet. ref'd) ..........................16

*Krause v. State*,
   243 S.W.3d 95 (Tex. App. – Houston [1st Dist.] 2007, pet. ref'd).......... 14-15

*Lanford v. Fourteenth Court of Appeals*,
   847 S.W.2d 581 (Tex. Crim. App. 1993) ........................................................8

*Mack v. State*,
   928 S.W.2d 219 (Tex. App. – Austin 1996)...................................................16

*Morgan v. State*,
   2015 Tex. App. LEXIS 5411 .........................................................................14

*Porter v. State*,
   873 S.W.2d 729 (Tex. App. – Dallas 1994) ..................................................11

*Roberts v. State*,
   963 S.W.2d 894 (Tex. App. – Texarkana 1998) ...........................................11

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| **DEWAN MORGAN,** | § | |
| APPELLANT | § | |
| | § | |
| v. | § | **No. PD-0758-15** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLEE | § | |

---

## APPELLANT'S BRIEF ON THE MERITS

---

**TO THE COURT OF CRIMINAL APPEALS:**

Comes now, Appellant, by and through his attorney of record, and respectfully submits his brief on the merits urging affirmation of the Judgment and Opinion of the Second District Court of Appeals.

## STATEMENT OF THE CASE

Appellant was convicted of burglary of a habitation and sentenced to twelve years confinement in prison. Appellant appealed to the Second District Court of Appeals. The Second Court of Appeals found the evidence legally insufficient, vacated the burglary conviction and affirmed a conviction against Appellant for the lesser included offense of assault. The State petitioned this Court for discretionary review, which was granted.

1

**STATEMENT REGARDING ORAL ARGUMENT**

This Court has granted oral argument. As this case will be of precedential value on issues yet to be addressed, Appellant believes oral argument would be beneficial to all parties.

**ISSUES PRESENTED**

1. In burglary of habitation cases, must trial and appellate courts utilize property law to determine who qualifies as the "owner" of a habitation as defined by the Penal Code?

2. To qualify as "entry without the effective consent of the owner," how much time must elapse after a victim revokes consent for her live-in boyfriend to enter her home for his forcible entry to be deemed a burglary?

**STATEMENT OF THE FACTS**

The complaining witness invited Appellant to live with her in her apartment and gave him a key. [3 RR 29-30]. The evidence shows that at the time Appellant moved in to the apartment, he was unemployed. [3 RR 29]. Upon becoming employed, Appellant began paying bills such as groceries, cleaning supplies and utilities. [3 RR 29]. Ms. Raglin paid the monthly rent, and at no point did she add appellant to her lease. [Id.]. The evidence also showed that her lease did not have Appellant as an approved occupant on the lease. [4 RR 29]. Both Ms. Raglin and Appellant had a key to the apartment. [3 RR 30]. At the time of the first assault,

2

April 30, 2013, these matters were still the same. [Id.]. Appellant continued to live with Ms. Raglin after this incident. [3 RR 39]. The arrangements for paying the bills also continued to remain the same through June 20, 2013, the day the incident that resulted in the burglary conviction occurred. [3 RR 40].

The June 20th incident happened at Ms. Raglin's apartment after 5:00 p.m. [Id.]. Earlier that day, Ms. Raglin had accidentally encountered Appellant at a convenience store. [3 RR 40-41]. Appellant had requested that she wait for him outside until he had completed his business in the store so that he could speak to her. [3 RR 41]. Ms. Raglin did not wait for him because they had argued earlier that day. [Id.]. She instead drove her vehicle to a male co-worker's house. [3 RR 42]. She and the co-worker then drove to her apartment. [3 RR 43]. They went inside her apartment, but the co-worker was leaving to pick them up something to eat when Appellant arrived. Ms. Raglin, while inside her apartment, observed Appellant and the co-worker exchange words in the parking lot but did not hear what was said. [3 RR 44]. She had the front door locked with a dead bolt that could only be unlocked from inside the apartment. [3 RR 45]. She locked that particular lock so that Appellant would not be able to enter the apartment. [Id.].

Appellant then came to the door and tried to enter the apartment by using his key. [3 RR 46]. When that failed, he knocked on the door and rang the doorbell. [Id.]. Appellant then threw some rocks into a side window of the apartment,

3

thereby breaking the window. [3 RR 46]. Ms. Raglin was standing immediately inside the front door and continued not to allow Appellant to enter. [3 RR 47]. At that point, notwithstanding the dead bolt being locked, Appellant kicked in the door and entered the apartment. [Id.].

After entering the apartment, Appellant bit Ms. Raglin's left breast. [3 RR 48]. Ms. Raglin testified that a scuffle ensued in the back of the apartment in which she and Appellant were hitting each other. [3 RR 48]. During the scuffle, Appellant punched Ms. Raglin and grabbed her arms. [Id.]. Ms. Raglin testified that her intent in locking the door to her apartment was not to force appellant to permanently vacate the residence, but only to have cooling-off period. [4 RR 12, 16]. Ms. Raglin testified that she told the police after they arrived that Appellant lived at the apartment and that she heard Appellant tell the officers that he resided at her apartment. [4 RR 17].

Ms. Raglin called 911and City of Dallas police officers were dispatched to her apartment. [3 RR 48]. Kenny Lopez was the first officer to respond to the scene. [4 RR 44]. Officer Lopez gathered information that established Appellant had assaulted Ms. Raglin. [4 RR 46-48, 51]. Appellant was arrested for the offense of assault-family violence. Appellant was not arrested for burglary of a habitation because the statements of both parties, as well as the officers' observations, showed that Appellant lived at the apartment. [4 RR 49]. Officer Lopez testified

4

that Ms. Raglin simply locking the door did not terminate his consensual occupation of the apartment. [4 RR 51].

Officer Justin Kash was also called as a witness by the State. [Id.]. He was in charge of the investigation of the incident at Ms. Raglin's apartment. [4 RR 61]. Officer Kash spoke with the complainant and determined how the assault occurred, including his belief that Appellant had choked Ms. Raglin. [4 RR 63]. He also testified that the address on Appellant's driver's license was different from that of Appellant's apartment. [4 RR 64]. After discussing the incident with other officers, Officer Kash made the decision to arrest Appellant for the offense of assault-family violence with impeding breath, a third-degree felony offense. [4 RR 71]. Because he and the other officers determined that Appellant was living at the residence, Appellant was not arrested for burglary. [4 RR 76]. Ultimately, the detective assigned to the case, Detective Quezada, changed the charge to burglary of a habitation. [4 RR 71]. Detective Quezada did not testify, and his reasoning in determining the correct charge was burglary was not known by the officers. [4 RR 73-74].

## SUMMARY OF APPELLANT'S ARGUMENTS

The question posited by the State incorrectly assumes that there can be only one owner of a habitation. The Penal Code definition of "owner" is expansive and allows for multiple owners of a habitation. As this can lead to ambiguity and absurd results, it was proper for the Second District Court of Appeals to turn to other laws on the subject, pursuant to the Code Construction Act. Furthermore, upon looking at other laws on the subject, it is clear that Appellant qualifies as an "owner" of the habitation in this case.

Again, the State incorrectly assumes in its second grounds for review that consent was revoked in this case. As Appellant was an owner of the property in question, his consent was never revoked, and the record is void of any evidence of revocation of his consent to live in the apartment.

# ARGUMENT

## <u>APPELLANT'S RESPONSE TO STATE'S GROUND ONE</u>

In burglary of habitation cases, must trial and appellate courts utilize property law to determine who qualifies as the "owner" of a habitation as defined by the Penal Code?

The State contends that the Second Court of Appeals erroneously applied common law and property law to determine who qualifies as an owner. While the State cites precedent for the definition of an "owner" in its brief, none of the cases cited stand for the proposition that the definition of "owner" in the Penal Code is exclusive of all other laws and cannot be interpreted with an eye toward other statutes and common law. Indeed, the legislature intended for Courts to utilize other laws when interpreting statutes, when the statute is ambiguous or would lead to an absurd result. *Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991).

One need only to turn to the Code Construction Act of Texas, where it is enacted that, "In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the…common law or former statutory provisions, including laws on the same or similar subjects". Tex. Gov't. Code Sec. 311.023(4). The Second Court of Appeals looked to common law and other laws on similar subjects, specifically ownership and property laws. This is not error, but rather comports with exactly what Courts are allowed to do when interpreting statutes pursuant to the Code Construction Act.

7

Though it is true that *Boykin* holds that a literal reading of the statute controls over the Code Construction Act, the Act may still be utilized when the statute is ambiguous or would lead to absurd results. In *Lanford v. Fourteenth Court of Appeals*, the Court of Criminal Appeals concluded that an ambiguity exists when the parties take polarized positions regarding the interpretation of a statute's text. *Lanford*, 847 S.W.2d 581, 587 (Tex. Crim. App. 1993); see also *Allen v. State*, 11 S.W.3d 474, 476 (Tex. App.--Houston [1st Dist.] 2000), affirmed, 48 S.W.3d 775 (Tex. Crim. App. 2001). Because the parties here take polarized positions as to whether "owner" includes someone who is also legally living at a residence, it is appropriate to apply the Code Construction Act.

Furthermore, while the State has argued that the Penal Code has aptly defined "owner," the State is incorrect. The term "owner" is not defined aptly in the Penal Code, as its interpretation allows for property to be owned by more than one person and thus can lead to confusion, such as in the case at bar. Furthermore, it can lead to an absurd result. Under the State's rationale, anyone with a greater right to possession than the actor is considered the one true owner. If that were the case, then a husband could criminally trespass his wife from the home that he purchased prior their marriage, even if she lives there with him. Since the definition of "owner" in the Penal Code is ambiguous when there are multiple owners, and such a literal interpretation would lead to absurd results, we must do

8

as the Second Court of Appeals did and look at other laws on the same or similar subjects pursuant to the Code Construction Act. The entire point of the Code Construction Act is to "describe and clarify common situations in order to guide the preparation and construction of codes." Tex. Gov't. Code Sec. 311.003.

In fact, this Honorable Court has on several occasions turned to other laws in order to interpret criminal statutes. While trying to determine whether a person who was issued a speeding ticket was in "custody" under the definition in Penal Code section 38.01, this Court cited the Code Construction Act and went beyond the definition of "custody" contained in the statute. *Azeez v. State,* 248 S.W. 3d 182, 189 (Tex. Crim. App. 2008). Because the term "present" as used in Texas Rules of Appellate Procedure was somewhat ambiguous, this Court cited the Code Construction Act and looked at other laws on the same or similar subjects, specifically other statutes and common law. *Carranza v. State*, 960 S.W. 2d 76, 79 (Tex. Crim. App. 1998).

As it was entirely proper, and statutorily authorized, for the Second Court of Appeals to interpret the term "owner" by applying other similar laws, the Appellate Court was not acting as a thirteenth juror. The State contends that the Fort Worth Court of Appeals improperly acted a thirteenth juror because it applied principles of law that were not supplied to the jury via the Trial Court's Charge or the evidence at trial. This argument fails as it forgets the distinct roles of judges and

9

jurors. In a jury trial, "…the jury is the exclusive judge of the facts…" Tex. Code of Crim. Pro. Sec. 36.13. The facts here are clear and undisputed. The legal conclusions to be drawn from those facts, however, are what are in dispute. In other words, this is a legal issue and not a factual one. As such, it is the responsibility of the trial and appellate courts to determine this legal issue and not the jury.

Furthermore, if appellate courts were not allowed to look at the evidence at trial and determine if it was legally sufficient to support a conviction (as the Second Court of Appeals did here), then why does the law allow for sufficiency review? The State's argument that an appellate court conducting a sufficiency review is improperly acting as a thirteenth juror is contrary to the law.

Even if we were to adopt the State's position that only the Penal Code definition of "owner" was applicable and exclusive, Appellant qualifies as an owner. If an owner is a person with possession of the property, then Appellant certainly qualifies. The term "possession" is defined in the Penal Code as "actual care, custody, control, or management." Tex. Pen. Code Sec. 1.07(a)(39). Appellant was living at the property and had a key. He slept there the night before and had been living there for months. He paid the utilities, rendering the place habitable. He kept his belongings there. He was in possession of the property.

Alternatively, even if Appellant is found to not have been in possession of the property under the Penal Code's definition, Appellant was still in constructive possession of the apartment because he had the power to exercise control over the apartment by possessing a key. As noted in *Porter*, constructive possession has not been defined under Texas law. *Porter v. State*, 873 S.W.2d 729, 734 (Tex. App. – Dallas 1994). In *Porter*, the Court turned to federal definitions as set forth by the Fifth Circuit and concluded that even when an individual is not in actual physical possession at the time of arrest, as long as the individual has "actual ownership" or a "power to exercise control," the individual is in constructive possession. *Id*. The Court went on to specify that constructive possession is sufficient to establish control in Texas. *Id*. at 735.

Furthermore, being in possession of a key has been deemed to reasonably imply control. *See Roberts v. State*, 963 S.W.2d 894, 898-99 (Tex. App. – Texarkana 1998) ("Roberts' possession of a key . . . reasonably implies his control . . ."). Appellant lived in the apartment, and, as such, had a key to his residence. Because Appellant had control and possession of the residence, he qualifies as an owner pursuant to the Penal Code.

The Second Court of Appeals found that Appellant qualified as a tenant. It is well settled that the ownership of a building may be laid in a tenant. *Black v. State*, 505 S.W. 2d 821, 823 (Tex. Crim. App. 1974). He lived there, paid the

11

utilities there, had a key, and stored his belongings there. Furthermore, the complainant testified that she did not intend to terminate his ability to live there. Therefore, he was still a tenant and still qualified as an owner.

In short, the answer to the question posited by the State in Ground One is that trial and appellate courts are not always required to look beyond the Penal Code to determine who an "owner" is, unless to do so would lead to an absurd result, as is the case when there are multiple owners. In such a case, the definition of "greater right to possession" would be of paramount importance. However, the Penal Code provides no definition for this term. Therefore, as is the case here, it becomes necessary to look beyond the Penal Code to other laws on the subject.

As such, the Second District Court of Appeals was correct in its determination to vacate the judgment of conviction for burglary of a habitation and instead find Appellant guilty of only the lesser included offense of assault.

## APPELLANT'S RESPONSE TO STATE'S GROUND TWO

To qualify as "entry without the effective consent of the owner," how much time must elapse after a victim revokes consent for her live-in boyfriend to enter her home for his forcible entry to be deemed a burglary?

The State has posited the question of how much time must elapse after a person revokes consent for a co-occupant to enter his or her home to be deemed a burglary. Such a question assumes that consent was revoked in this case. This assumption is incorrect. In this case, the victim testified that she and Appellant had been living together and that she had locked him out previously, only to allow him to return later. [3 RR 39]. As this was a prior occurrence between the two, her revocation of his consent to be on the property needed to be more than merely temporarily locking him out. Indeed, she testified at trial that she had no intention of permanently evicting him or kicking him out. [4 RR 12, 16]. She told the officers at the scene that Appellant "lived there." [4 RR 17]. One of the arresting officers even testified that Ms. Raglin simply locking the door did not terminate Appellant's consensual occupation of the apartment. [4 RR 51]. The officer was absolutely right. In this case, Ms. Raglin never communicated to Appellant that he was not welcome or that he could not come in. She locked the deadbolt, and did not answer the door. This does not constitute revocation of her consent for Appellant to be there. Indeed, the Second Court of Appeals concluded that there was "no evidence of absence of owner's consent" and "no evidence that

13

Appellant's tenancy was terminated before his arrest for this incident." *Morgan v. State*, 2015 Tex. App. LEXIS 5411, at *4, *6.

The State's argument ignores this plain and undisputed fact: Appellant lives there. This is his home. He is a co-owner as was addressed in the previous section. One cannot simply lock the door and terminate a person's ability to be in his or her home. Furthermore, when interpreting a statute, "it is presumed that…a just and reasonable result is intended." Tex. Gov't. Code Sec. 311.021(3). If we take the State's logic (someone with a greater right to possession can terminate a person's ability to enter their home) out to its logical conclusion, then the following situation can and will occur. A husband purchases a home prior to his marriage. It is his separate property, and he has a greater right to possession than the person that he later marries. After an argument, his wife leaves for work and he locks the door that she has no key to. She climbs in through a window to regain entry. Is that burglary? It is, if we follow the State's argument out to its logical conclusion.

The answer to the State's question of how much time must elapse is inappropriate here because consent was never revoked. For someone to revoke a person's right to enter the place where they legally live, there needs to be something more than a mere locking of the door. The Houston Court of Appeals, First District has addressed this issue in *Krause v. State*, 243 S.W. 3d 95 (Tex.

14

App.—Houston [1ˢᵗ Dist.] 2007, pet. ref'd.).  In *Krause*, the defendant was convicted of the offense of possession of child pornography.  He moved to suppress the pornography, claiming that the evidence was obtained illegally by a person who did not own defendant's trailer and did not have a key.  In fact, the person who found the evidence in *Krause* climbed through the window in order to gain entry into the trailer.  The trial court denied the motion, and Krause appealed.  The First Court of Appeals affirmed the trial court.  Specifically, the First Court found that despite the fact that the person who obtained the evidence was not an owner, had no key, and had to climb through a window to enter the trailer, he qualified as an owner because he lived there.  Just as that person was not acting illegally by entering a locked trailer through a window, neither was Appellant for entering a locked door by kicking it in.

The State contends that Appellant's effective consent to enter had been revoked.  The State does not offer any case law with similar facts, i.e., where there are co-owners or cotenants, to back up this claim.  Appellant knows of no Texas case that exists to support this claim.

The State then turns its argument to what is lawful after effective consent has been revoked.  In support thereof, the State offers cases concerning possession of property in burglary cases.  Again, none of the cases cited have co-owners or cotenants in the fact patterns.  Therefore, the cases are not material to the topic at

hand. The State relies specifically on *Dominguez*, and the determination of possession needing to be made "prior to and not during the break-in." *Dominguez v. State*, 355 S.W.3d 918, 923 n.2 (Tex. App. – Fort Worth 2011, pet. ref'd). There are two issues in the State's reliance on this case. First, under the State's theory, there is only one true owner so Appellant's actions to get inside the apartment must have been a break-in. This is simply untrue and there's no evidence in the record to support this assertion. Second, if determination of possession is to be made prior to and not during a "break-in," then Appellant surely qualifies as an owner. At no point during the day of the offense was he unwelcome in his own home until he was arrested and taken into custody.

The State also relies on *Mack v. State*, 928 S.W.2d 219 (Tex. App. – Austin 1996), and its assertion that possession and control of the property is to be determined "*on the date of the offense.*" *Mack*, 928 S.W.2d at 224 (emphasis in original). In *Mack*, the Court specified that "the greater right of possession doctrine does not credit rights that are unrealized." *Id.* As such, Appellant must be considered an owner under this framework. His realized rights earlier that very day were those of a co-owner and cotenant with full access, possession, and control over the property.

In short, Appellant qualifies as an "owner" is this case. Even if he does not qualify as an owner, he had effective consent to be in the apartment as he was

allowed to live there. Furthermore, in order to revoke that consent, his legal ability to live there would have to at least be communicated to him. The only evidence at trial on this issue was the officer's testimony that Regina's locking of the door did not terminate Appellant's ability to live there. There is no set amount of time that must elapse after a person revokes consent for her live-in boyfriend to enter her home for his forcible entry to be deemed a burglary. However, there must actually be revocation of the consent, and the live-in boyfriend must not also be a co-owner or co-tenant.

As such, the Second District Court of Appeals was correct in its determination to vacate the judgment of conviction for burglary of a habitation and instead find Appellant guilty of only the lesser included offense of assault.

17

**PRAYER FOR RELIEF**

WHERFORE, PREMISES CONSIDERED, Appellant prays that this Honorable Court uphold and affirm the judgment and opinion of the Second District Court of Appeals and find the evidence legally insufficient to support a conviction against Appellant for burglary of a habitation.

Respectfully Submitted,

/s/ Christopher Abel
Christopher Abel
Attorney for Appellant
Bar No. 24043516
2609 Sagebrush Drive
Suite 202
Flower Mound, Texas 75028
972-584-7837
972-947-3813(fax)
chris@flowermoundcriminaldefense.com

**CERTIFICATE OF COMPLIANCE**

Attorney for Appellant certifies that this Brief on the Merits contains a word count of 4,567, as computed by the software program Microsoft Word, which was used to prepare the document.

/s/ Christopher Abel
Christopher Abel

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the forgoing Brief on the Merits was sent by U.S. First Class Mail, postage paid, to counsel for the State of Texas, Yael Zbolon at 1450 East McKinney Street, Suite 3100, Denton, Texas. 76209 and to State Prosecuting Attorney, Lisa McMinn at Post Office Box 13046, Austin, Texas 78711-3046 on this the 9th day of November, 2015.

/s/ Christopher Abel
Christopher Abel