**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Henry CARTER, a/k/a A.B. Lay a/k/a Prince, Tracy Lynn Jones, and Sheila Marie O'Meara, Defendants–Appellants.**

**Nos. 87–5278, 87–5279 and 87–5300.**

United States Court of Appeals,
Eighth Circuit.

Submitted July 22, 1988.

Decided Aug. 17, 1988.

Rehearing Denied in No. 87–5278
Sept. 22, 1988.

Jonathan E. Fruchtman, Minneapolis, Minn., for appellant Lay.

Michael F. Fetsch, St. Paul, Minn., for appellant O'Meara.

Scott F. Tilsen, Minneapolis, Minn., for appellant Jones.

Thorwald H. Anderson, Jr., Minneapolis, Minn., for plaintiff-appellee.

Before HEANEY and MAGILL, Circuit Judges, and EDWARDS,* Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.

Defendants Carter, Jones, and O'Meara appeal their convictions for possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), 21 U.S. C. § 846 and 21 U.S.C. § 845b(a)(1) and (d)(2).

Defendants were convicted of various drug-related offenses discovered by an undercover police operation. Defendants assert several evidentiary issues on appeal,

---

* The HONORABLE GEORGE C. EDWARDS, JR., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

which they feel warrant reversal of their convictions. Defendants were convicted under a four-count indictment; Count I—using a person under the age of 14 in a drug operation; Counts II and III—possession with the intent to distribute cocaine, and Count IV—conspiracy.

The evidence presented at this trial was overwhelmingly to the effect that all of the above-named appellants were involved in a substantial drug conspiracy operation. Nonetheless, substantial questions are presented.

These appeals represent the contention that the persons charged herein should go free "because the constable has blundered." As we will outline below, we do not think the record discloses such blunders.

The principal issue presented concerns whether one of the defendants (O'Meara) gave consent to a warrantless search of her motel room. It is undisputed that this search led to application for and issuance of a search warrant and the seizure of seven ounces of cocaine. The government does not dispute that the search warrant at issue was not sought or procured until after the officers had seen the cocaine and left the room. But the record in this appeal clearly allowed a finding that the initial entry was made with the consent of the occupant.

One of the parties involved in this conspiracy testified for the prosecution under a plea agreement. Three others, namely, defendants Carter, Jones and O'Meara were convicted after a jury trial. It is their appeals with which we deal.

On the evening of January 13, 1987, Minneapolis Police Narcotics Officer Jensen (Jensen) and an informant, Gloria Dysart (Dysart) arranged with defendant Carter to purchase one ounce of cocaine. The transaction was to take place that evening at a convenience store. When Carter failed to show, Jensen telephoned Carter via Carter's beeper. Carter stated that his girlfriend "Tracy" would be at the same convenience store with the cocaine. The informant provided a description of "Tracy."

Jensen and Dysart then left the convenience store, leaving a surveillance crew to observe the activity at the store. Thereafter a woman matching "Tracy's" description arrived. After standing by the open trunk of her car, she then used the public telephone and subsequently left. The police stopped the car and the driver identified herself as Tracy Jones. After receiving her *Miranda* warnings, she explained that the car was rented by Prince, a/k/a Carter. Jones was arrested and the car impounded. A search warrant was issued for the car. The search uncovered one ounce of a weak cocaine/mannitol substance, plastic bags and 1.5 lbs. of baking soda.

Jensen and Dysart again telephoned Carter. Carter agreed to meet them and did so. When Carter requested front money to get the cocaine, Jensen refused and Carter left. Later that evening Carter was arrested with co-defendant Richey and his beeper was confiscated by Minneapolis Narcotics Officer Vande Steeg (Vande Steeg).

Vande Steeg responded to a beeper call from Richey's house. The call was answered by Richey's 12 year-old daughter, Selena. Vande Steeg explained that Carter had given him the beeper and he was interested in buying one ounce of cocaine. Selena told him that "Sheila" had Carter's "whole stash." Selena again called Vande Steeg by the beeper and Vande Steeg told her to have O'Meara call him as soon as possible. When O'Meara did not call, Vande Steeg called Selena back. Selena explained that O'Meara wanted to know how he knew her and Carter. He stated that he had purchased cocaine from them before. O'Meara then called Vande Steeg and assured him of the sale. Through prior conversations with Selena, Vande Steeg had discovered that O'Meara was located at the Snelling Motor Inn.

Vande Steeg and Jensen proceeded to the Snelling Motor Inn. Asking the manager to page O'Meara, the officers waited for her to leave the room and arrested her. After O'Meara was arrested, the officers asked if anyone else was in the motel room. O'Meara said no, but told them that they

could look if they wanted. Further O'Meara requested shoes and coat because she had been arrested while barefoot on a typically cold January night in Minnesota. Upon entering the room, the officer made a protective sweep search, saw approximately seven (7) ounces of cocaine on a table in the room. Nothing was taken from the room until the officers secured a search warrant for the room.

Vande Steeg presented O'Meara with the inventory list compiled during the search of the motel room pursuant to the warrant. O'Meara contended that $4,000 hidden under the mattress had been omitted. Vande Steeg called the motel to postpone cleaning until he could return and recover the money. Thereafter, the money was retrieved. Throughout the time of this incident, O'Meara was current in her motel bill.

Roseanna Richey, co-defendant, testified for the prosecution under a plea agreement. Her testimony confirmed the information that was given by the informant, Gloria Dysart. Thus, there was strong evidence that a conspiracy existed with Carter being the front man. Richey described the defendants' various roles. Richey, herself, sold cocaine and "crack" from her home for Carter. O'Meara brought the cocaine to Carter, who would then give it to Jones to transform into "crack." Transforming the cocaine to "crack" took place in Richey's home. Jones would then distribute the "crack" to the others, including Richey, to sell. Jones kept the books. The money from the sales was given to Jones who then paid Carter.

## I

Appellants Carter and O'Meara challenge the search of O'Meara's motel room. The United States raised the issue of Carter's standing to challenge the searches of the motel. O'Meara registered and paid for two people at the Snelling Motor Inn, although the second person was not identified. In *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980), the Supreme Court reaffirmed its holding in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978),

that abandoned a separate inquiry into a defendant's standing to contest an allegedly illegal search in favor of an inquiry that focused directly on the substance of the defendant's claim that he or she possessed a legitimate expectation of privacy (*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)), in the area searched. In *United States v. Salvucci*, 448 U.S. 83, 95, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619 (1980), the Supreme Court shifted the Fourth Amendment inquiry to a determination of whether the defendant had a possessory interest in the items seized, and whether the defendant had an expectation of privacy in the area searched. The First Circuit elaborated upon this inquiry in *United States v. Gomez*, 770 F.2d 251, 254 (1st Cir.1985):

> The following factors are relevant to a privacy expectation: possession or ownership of the area searched or the property seized; prior use of the area searched or the property seized; legitimate presence in the area searched; ability to control or exclude others' use of the property; and a subjective expectation of privacy. *United States v. Lochan*, 674 F.2d 960, 965 (1st Cir.1982).

The expectation of privacy associated with a person's home applies with equal force to a properly rented motel room during the rental period. *United States v. Rambo*, 789 F.2d 1289, 1295 (8th Cir.1986).

Here Carter cannot claim a real expectation of privacy in the motel room. He never appeared there; he neither checked in nor paid for the room. Moreover, none of his personal belongings was discovered in the room. It is strange to claim a privacy interest in a place where one has never been or where no belongings of the claimant are kept. Further, Carter did not have the ability to exclude others' use of the room. In *United States v. Larson*, 760 F.2d 852, 855 (8th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985), this court held that among the factors to be considered when evaluating a person's expectation of privacy in a motel room are the facts that the occupier never

checked into the room, nor paid for the room.

## II

■ The magistrate, whose decision was affirmed by the trial judge, recommended that the search be upheld on two separate grounds. The first ground designated by the magistrate was that O'Meara consented to the search. It is a well established principle that consent to conduct a search is a recognized exception to the requirement of a warrant and probable cause. *Davis v. United States,* 328 U.S. 582, 593–594, 66 S.Ct. 1256, 1261–1262, 90 L.Ed. 1453 (1946). If a consent to search is the fruit of a Fourth Amendment violation, then the consent is deemed a nullity and the evidence is inadmissible. *Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983). Although O'Meara denies any consent was given, it is the jury's duty to evaluate the credibility and demeanor of the witnesses. *United States v. Whitehorse,* 807 F.2d 1426, 1431 (8th Cir.1986).

A search conducted with valid consent does not violate the Fourth Amendment. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The government has the burden to establish that [defendant's] consent was freely and voluntarily given and not the result of duress or coercion (citations omitted). This is a fact question which we must determine from the totality of all the circumstances. *Schneckloth v. Bustamonte, supra.*

*United States v. Matthews,* 603 F.2d 48, 51–52 (8th Cir.1979), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 650 (1980).

The Supreme Court delineated some of the factors to be considered under the totality of the circumstances in *United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976).

There was no overt act or threat of force against Watson proved or claimed. There were no promises made to him and no indication of more subtle forms of coercion that might flaw his judgment. He had been arrested and was in custody, but his consent was given while on a public street, not in the confines of the police station. Moreover, the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search. Similarly, under *Schneckloth,* the absence of proof that Watson knew he could withhold his consent, though it may be a factor in the overall judgment, is not to be given controlling significance.

In facts very similar to this case, another court upheld the warrantless entry of a trailer to retrieve defendant's clothing and the subsequent plain view seizure of drug accessories.

Appellant was arrested in her car wearing only shorts and a loose blouse. She asked the marshals to bring her some clothes from her mobile home or trailer some miles away because she did not want to go to jail dressed as she was.

\*    \*    \*    \*    \*    \*

The court found the evidence had been seized when seen in "plain view" during a "fully justifie[d] ... protective sweep." Alternatively, the court found the officers acted with appellant's consent.

\*    \*    \*    \*    \*    \*

Once lawfuly in the trailer, the officers were "permit[ted to conduct] a protective search of part or all of the residence [if] the officers reasonably believe[d] that there might be other persons on the premises who could pose some danger to them." (citation omitted).

*United States v. Gilbert,* 774 F.2d 962, 963 (9th Cir.1985).

In our present case there was no warrantless seizure, there was plain view observation of cocaine which led to the issuance of a search warrant. There has also been a question raised about O'Meara's ability to consent due to possible drug intoxication. "However, the mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary." *United States v. Rambo, supra,* at 1297. Moreover, none of the factors considered by the Supreme Court in *Watson* exists here.

The second ground supporting the search is that exigent circumstances justified the officers' actions. In *United States v. Hill*, 730 F.2d 1163, 1169 (8th Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 225, 83 L.Ed.2d 192 (1984), this court recognized the validity of "sweep searches" of premises for the safety of law enforcement personnel during the lawful arrest of dangerous felons. Further, in *United States v. Larson, supra*, this court held that exigent circumstances justifying a warrantless search occur when there is probable cause under the totality of the circumstances to believe that contraband is located in the room; second, exigent circumstances exist where there is no knowledge as to other occupants and there is a danger of evidence destruction. Here, Vande Steeg had arranged to buy some cocaine from O'Meara. Moreover, the conspiracy had already netted four people, but there was no way for the officers to know if others were involved or even in the motel room.

A finding that exigent circumstances justified a warrantless entry into a motel room is subject to the clearly erroneous standard of review. *United States v. Knobeloch*, 746 F.2d 1366, 1368 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985). Whether based upon consent or exigent circumstances, the search was permissible under Fourth Amendment strictures. The evidence was properly admitted and the trial court therefore did not err.

O'Meara also challenges the validity of the search warrant. The United States supports its position by citing to *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), where the Supreme Court established the good faith exception to the exclusionary rule. In determining whether probable cause exists, an examination of all the circumstances must be conducted, and if there is probable cause under the totality of the circumstances, then the warrant is sufficient. *Illinois v. Gates*, 462 U.S. 213, 230–231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). Here, the phone conversations, the informant and the attempted sale, all established the drug scheme that involved the defendants. An affidavit in support of a search warrant need only establish the probability of criminal activity and secreting of evidence on specific premises, not proof beyond a reasonable doubt. *United States v. Jones*, 545 F.2d 1112, 1114 (8th Cir.1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977).

O'Meara also challenges the return search. In *United States v. Huslage*, 480 F.Supp. 870, 875 (W.D.Pa.1979), the Court held that the question is not whether there were two entries pursuant to the warrant, but rather, whether the second search was a continuation of the first. In *United States v. Bowling*, 351 F.2d 236, 241 (6th Cir.1965), *cert. denied*, 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966), the Sixth Circuit upheld entries onto premises on successive days pursuant to a single warrant. Consequently, the warrant listed money as an item to be recovered and the search took place several hours later. The authority of the warrant had not expired and therefore the return search was not beyond the scope of the Fourth Amendment.

### III

The issue of the sufficiency of the evidence has been posed by appellant Jones as to her conviction on one count of possession with the intent to distribute, and appellant O'Meara relating to her conviction on the use of a minor under the age of fourteen in the distribution of a controlled substance.

In considering the sufficiency of the evidence, we must view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences which may logically be drawn therefrom. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Resnick*, 745 F.2d 1179, 1185 (8th Cir.1984). The evidence need not exclude every reasonable hypothesis of innocence, but simply "be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *United States v. Wells*, 721 F.2d 1160,

1161 (8th Cir.1983) (quoting *United States v. Taylor*, 599 F.2d 832, 838 (8th Cir.1979)). If the evidence rationally supports two conflicting hypotheses, a reviewing court will not disturb a conviction. *United States v. Keck*, 773 F.2d 759, 769 (7th Cir.1985). Indeed, this court may overturn the verdict only if the evidence properly viewed is such that "a reasonable-minded jury *must* have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense." *United States v. Noibi*, 780 F.2d 1419, 1421 (8th Cir.1986).

*United States v. O'Connell*, 841 F.2d 1408, 1424 (8th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988).

■ This court held in *United States v. Baswell*, 792 F.2d 755, 760 (8th Cir.1986), that "possession of even a relatively small quantity of cocaine is sufficient to show intent to distribute the drug when there is other evidence of such an intent." "Intent to distribute may be established by circumstantial evidence." *United States v. Franklin*, 728 F.2d 994, 998 (8th Cir.1984). The one ounce of cocaine obtained from the trunk of the car was diluted by mannitol. Mannitol, a sugar compound, is commonly used as a cutting agent for cocaine and heroin. The presence of mannitol and cocaine, no matter what the percentages, combined with all the other evidence, present sufficient evidence to convince the jury of guilt beyond a reasonable doubt.

■ In *United States v. Irons*, 475 F.2d 40, 42 (8th Cir.), *cert. denied,* 412 U.S. 951, 93 S.Ct. 3020, 37 L.Ed.2d 1004 (1973), this court held that it is well settled that absent some evidence of participation, the court will not sustain a conviction. O'Meara cannot successfully challenge the sufficiency of the evidence where testimony from several sources establish her active and integral participation in the scheme utilizing a minor under the age of fourteen in the distribution of cocaine.

## IV

■ Lastly, Jones challenges the jury instruction on Count I of the indictment.

The controversy stems out of the knowledge requirement in 21 U.S.C. § 845b. The appellant claims that the statute requires knowledge that the minor is under fourteen. Ambiguities in the scope of a statute should be resolved in favor of lenity. *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). "... a federal trial judge in instructing a jury in a criminal case is required to define accurately the essential elements of the offense charged, and a failure on the part of the trial judge to do so is 'grave error'." *United States v. Hiscott*, 586 F.2d 1271, 1275 (8th Cir.1978).

However, the Eleventh Circuit had an opportunity to address the knowledge issue under Section 845:

Section 845 of 21 U.S.C.A. provides that anyone who knowingly or intentionally distributes controlled substances to a person under twenty-one is subject to enhanced penalties. During the course of their deliberations, the jury presented a question to the trial court which read "[d]oes knowingly refer to the age [of the purchaser] or the distribution itself?" After an *in camera* discussion with counsel, the court instructed the jury that it is not an essential element of the crime that the person who distributes be knowledgeable that the person to whom he distributes is under twenty-one years old; it is the distribution that must be knowing, although it is an essential element that the person to whom the distribution is made is under twenty-one. Appellant argues that this instruction was error, because it violated the interpretive principle that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Bingham, Ltd. v. United States*, 724 F.2d 921, 924–925 (11th Cir.1984). Appellant argues that knowledge of the age of the recipient of the controlled substance was an essential element of the crime and that the prosecution failed to prove it in this case.

The trial court is vested with broad discretion in formulating its charge, and will not be reversed unless the charge

fails accurately to reflect the law. *United States v. Walker*, 720 F.2d 1527 (11th Cir.1983), *cert. denied*, [465] U.S. [1108], 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984). There appear to be no cases defining the "knowledge" requirement of Section 845. There is, however, a precise analogue to this statute, 18 U.S.C.A. § 2421 *et seq.* (White Slave Traffic Act), which prohibits the interstate transportation of persons in order to engage in immoral practices including prostitution, and which provides enhanced penalties for the knowing transportation of persons under the age of eighteen years. Under this statute, knowledge of the victim's age is *not an element* of the crime; the "knowing" component applies to the transportation itself. *United States v. Hamilton*, 456 F.2d 171 (3d Cir.), *cert. denied*, 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972).

*United States v. Pruitt*, 763 F.2d 1256, 1261–1262 (11th Cir.1985), *cert. denied*, 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986).

The Eleventh Circuit's reasoning seems logical and consistent with the purpose behind the statute. To rule otherwise would permit drug dealers to close their eyes as to the age of the minors who become part of the operation, without fear of reprisal.

Appellants seek to overturn convictions that were well established by the facts. The dispute as to consent was resolved by the jury in favor of the government. The issues on this appeal do not question the integrity of the verdict or the discretion of the trial judge. Appellants were caught in a fairly complex drug scheme and the conduct of the officers was within legal bounds.

Therefore, appellants' convictions are affirmed.