**The STATE of Texas, Appellant,**

v.

**Nancy N. NEESLEY, Appellee.**

**No. 01–05–00558–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 8, 2006.

---

Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Eric Kugler, Asst. Dist. Atty. of Harris County, Houston, for Appellant.

James R. Butler, Steven J. Lieberman, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices TAFT and NUCHIA.

## OPINION

SHERRY RADACK, Chief Justice.

The State charged appellee, Nancy N. Neesley, with intoxication manslaughter. Appellee filed a motion to suppress contending that a second specimen of appellee's blood was taken in violation of her statutory and constitutional guarantees under the Fourth and Fourteenth Amendments to the U.S. Constitution, article 1 section 9 of the Texas constitution, chapters 14 and 15 of the Texas Code of Criminal Procedure, and chapter 724 of the Texas Transportation Code. The trial court granted appellee's motion to suppress the second blood specimen under chapter 724 of the Transportation Code, and the State appeals.

The State presents four issues for review: (1) probable cause and exigent circumstances authorized the second drawing of appellee's blood without a warrant and without additional statutory compliance; (2) the implied consent statute is not applicable because appellee's blood was drawn primarily for treatment purposes; (3) section 724.012(b) of the Transportation Code (implied consent statute) allows for the taking of multiple specimens to obtain a "usable" specimen; and (4) the second drawing of blood was a continuation of the initial blood sample, precluding the need for additional authorization for the second blood sample. We conclude (1) the State waived its first two issues for review; (2) section 724.012(b) allows for the taking of a single specimen; and (3) the continuation-search theory is not applicable. We affirm.

## Background

On July 26, 2004, appellee was involved in a head-on vehicle collision with Cynthia Perez. Detective Anders, an accident investigator with the Harris County Sheriff's Department, spoke with a witness who claimed that appellee swerved into Perez's lane. The witness stated he was traveling northbound in front of Perez's vehicle when appellee's southbound vehicle veered into his and Perez's lane, causing him to swerve to the right to avoid a collision. The witness saw appellee's vehicle continue south in the northbound lane and collide with Perez's vehicle. Detective Anders then spoke briefly with appellee to ascertain her identity. Although appellee had an oxygen mask over her face, Detective Anders detected a "moderate" odor of alcohol. Thinking that alcohol may have factored into the accident, Detective Anders sought to verify the witness's claims that appellee veered into oncoming traffic. Detective Anders verified this information when he determined that the point of impact occurred one foot inside Perez's lane. He then decided that appellee's blood needed to be analyzed to determine whether appellee was intoxicated.

While appellee was transported to the hospital, rescue workers were still trying to free Perez from her vehicle. The collision had trapped Perez behind her steering wheel, and rescue workers had to use the jaws of life to remove Perez. When

the workers cut Perez free and relieved the pressure from her lower extremities, she went into cardiac arrest and died at the scene.

Deputies Marines and Hernandez were assigned to handle appellee's blood sampling. Because both deputies noticed an odor of alcohol while speaking with appellee, Deputy Hernandez performed a horizontal gaze nystagmus test. Hernandez found all six clues of impairment[1] and shared those observations with Deputy Marines. Deputy Marines then read appellee the statutory warnings form regarding breath and blood sampling, but appellee refused to provide a sample. Deputy Marines next filled out a mandatory blood draw form.

Around 8:30 p.m., a registered nurse took blood samples from appellee's left arm for treatment purposes and for Deputies Marines and Hernandez. Because an intravenous line with a saline solution had been attached to appellee's left wrist and the blood was taken a few inches "downstream," the first blood samples were contaminated or diluted with saline solution. Approximately 50 minutes later, at 9:25 p.m., Deputy Marines had a second blood sample taken from the right arm, but he did not request appellant's permission to take the second sample, did not have consent, and did not have a warrant. Appellee filed a motion to suppress this second blood sample, and the trial court granted that motion.

### Waiver

■ Regarding the State's first issue, appellee contends the State waived the argument by failing to raise it with the trial court below. Appellee cites *Hailey v.*

State, 87 S.W.3d 118, 122 (Tex.Crim.App. 2002) for the proposition that an appellate court may not reverse a trial court on a theory not presented to the trial court. The State contends that, under Rule 103(a)(2) of the Texas Rules of Evidence, when a trial court excludes evidence, the losing party must merely make the substance of the evidence known to the trial court in order to appeal error; thus, the State argues that it has not waived the argument.

■ The Court of Criminal Appeals addressed a situation similar to ours in *State v. Mercado*, 972 S.W.2d 75 (Tex.Crim.App. 1998). In *Mercado*, the trial court granted Mercado's motion to suppress cocaine found in his car after a search of a closed bag. *Id.* at 76. On appeal, the State argued for the first time that the search was a valid search incident to arrest. *Id.* The court held that "ordinary notions of procedural default should apply equally to the defendant and the State." *Id.* at 78. Thus, where the "State is a party appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense." *Id.* Here, the State attempts to limit the holding of *Mercado* to situations that involve the Fourth Amendment. The State argues that, because appellee contends the second blood sample was impermissible regardless of the application of the Fourth Amendment, *Mercado* is inapplicable. We disagree that *Mercado* should be so limited.

In *Martinez v. State*, 91 S.W.3d 331, 336 (Tex.Crim.App.2002), the Court of Criminal Appeals recognized an expansive read-

---

1. The six clues of impairment consist of three clues in each eye: (1) the lack of smooth pursuit; (2) distinct nystagmus at maximum deviation; and (3) the onset of nystagmus prior to 45 degrees. *McRae v. State*, 152 S.W.3d 739, 743 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd).

ing of *Mercado* and did not limit its application to Fourth Amendment cases:

> As this Court stated in *State v. Mercado,* under [Texas Rule of Appellate Procedure 33.1], the issue is not whether the appealing party is the State or the defendant or whether the trial court's ruling is legally "correct" in every sense, but whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal. This "raise it or waive it" forfeiture rule applies equally to goose and gander, State and defendant.

(footnotes omitted). Because the State did not present its first issue at the trial court, we conclude it waived that argument on appeal. *Id.*

In its second issue, the State contends the second blood sample was admissible because it was taken for treatment purposes. Appellee responds again that the State waived this argument for failing to present this to the trial court. Texas Rule of Appellate Procedure 33.1 requires complaining parties to set forth the grounds for their complaint with "sufficient specificity to make the trial court aware of the complaint." TEX.R.APP. P. 33.1(a)(1)(A). The State argues it preserved error by pointing to the italicized language below in its closing statement at the suppression hearing:

> The State's argument is that the second blood draw is reliable and admissible because it's taken from the other arm, the saline does not effect [sic] it. How do we know that? We know it from the hospital because [Defense Counsel] admitted Defense Exhibit C that says *the hospital sent it back, there's too much saline in your first draw, retake it.* We know from the medical records that are in the Court's file they never came back and Nurse Pope testified they never

came back to the lab on the second draw and said there was a problem with it. They used it.

In its brief, the State admits that "while the argument was not as well developed as it was on appeal, the trial court was informed that the blood was not merely requested by the peace officers." However, the trial court's mere awareness of this fact does not suffice under Rule 33.1. This language, in context, fails to show that the State relied on this as an argument to support the introduction of the second blood sample. The language does not meet Rule 33.1's *sufficient specificity* requirement; thus, we conclude the State waived this argument. *Id.; Martinez,* 91 S.W.3d at 336. We overrule the State's second issue.

### Implied Consent Statute

In its third issue, the State contends the implied consent statute (chapter 724 of the Transportation Code) allows for the taking of multiple specimens to obtain a "usable" specimen. The pertinent parts of section 724.012 provide as follows:

> (a) one or more specimens of a person's breath or blood may be taken if the person is arrested and at the request of a peace officer having reasonable grounds to believe the person:
>
> > (1) while intoxicated was operating a motor vehicle in a public place, or a watercraft; or
> >
> > (2) was in violation of Section 106.041, Alcoholic Beverage Code.
>
> (b) A peace officer shall require the taking of *a specimen* of the person's breath or blood if:
>
> > (1) the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft;

(2) the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense;

(3) at the time of the arrest the officer reasonably believes that as a direct result of the accident:

(A) any individual has died or will die; or

(B) an individual other than the person has suffered serious bodily injury; and

(4) the person refuses the officer's request to submit to the taking of a specimen voluntarily.

TEX. TRANSP. CODE ANN. § 724.012(a)—(b) (Vernon Supp.2005) (emphasis added). Because this is a refusal of consent case, subsection (b) applies. *Id.* Once the State established the four elements of subsection (b) for the first blood sample, the State contends that it could take the second blood sample without again complying with the requirements because subsection (b) allows for the drawing of multiple specimens. Appellee counters that the plain language of subsection (b) allows for the drawing of "a specimen," not multiple specimens.

Whether subsection (b) allows for the drawing of multiple specimens is an issue of first impression.[2] We begin our analysis by observing that the Transportation Code has its own rule guiding construction of its provisions. *Allen v. State,* 11 S.W.3d 474, 476 (Tex.App.-Houston [1st Dist.] 2000), *aff'd,* 48 S.W.3d 775 (Tex.Crim.App. 2001). Section 1.002 provides that "[c]hapter 311, Government Code (Code Construction Act), applies to the construction

of each provision in this code except as otherwise expressly provided by this code." TEX. TRANSP. CODE ANN. § 1.002 (Vernon 1999). This poses a potential conflict with the leading case on statutory construction from the Court of Criminal Appeals. *See Boykin v. State,* 818 S.W.2d 782, 786 (Tex.Crim.App.1991) (establishing the "plain language" approach that limits consideration to the text of the statute unless it is ambiguous or leads to absurd results). The Code Construction Act allows consideration of extra-textual factors without requiring ambiguity in the text of the statute. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005). We can easily avoid the conflict by resorting to *Lanford v. Fourteenth Court of Appeals,* 847 S.W.2d 581, 587 (Tex.Crim.App.1993), in which the Court of Criminal Appeals eviscerated its *Boykin* rule by finding ambiguity when the parties took polar opposite interpretations of the text. *See L.B. Foster Co. v. State,* 106 S.W.3d 194, 203 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd); *Allen,* 11 S.W.3d at 476. Because the parties take polar opposite positions here, we are free to apply the Code Construction Act in resolving the issue.

Section 311.023 of the Code Construction Act provides for construction aids that may be considered: (1) the object sought to be attained, (2) circumstances under which the statute was enacted, (3) legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) consequences of a particular construction, (6) administrative construction of the statute, and (7) title (caption), preamble, and emergency

---

**2.** The State points to *Texas Department of Public Safety v. Duggin,* 962 S.W.2d 76, 79 (Tex.App.-Houston [1st Dist.] 1997, no pet.) and *Kerr v. Texas Department of Public Safety,* 973 S.W.2d 732, 734–35 (Tex.App.-Texarkana 1998, no pet.) as support for construing section 724.012(b); however, both cases construe the allowance of multiple specimens under section 724.012(a). Thus, we do not find them helpful in this case.

provision. Tex. Gov't Code Ann. § 311.023 (Vernon 2005).

When looking to the first four factors, we see that subsection (b) of 724.012 traces its roots to Senate Bill 1 of the 68th Legislature. Act effective January 1, 1984, 68th Leg., R.S., ch. 303, 1983 Tex. Gen. Laws 1568, 1584 (amended 1993, 1995, 1997, 2003).[3] This original version required the taking of "a specimen" as well, but limited such a taking to when a person had died or would die as a result of the accident. *Id.* The stated purpose of the original bill was to "save lives and decrease the number of casualties caused by drunken drivers" by stiffening the penalties for DWI convictions. House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. S.B. 1, 68th Leg., R.S. (1983). In 2003, the Legislature carried over the "a specimen" language, but expanded subsection (b) to require that "a specimen" also be taken if a person has suffered serious bodily injury. Act effective September 1, 2003, 78th Leg., R.S., ch. 422, 2003 Tex. Gen. Laws 1669. The State relies heavily on this bill analysis which provides the following purpose and backdrop against which this bill was amended:

> More Texans are killed in alcohol-related crashes than in any other state. [sic] Texas has the nation's worst problem with drunk driving in terms of total deaths and injuries, with 50% of traffic fatalities involving alcohol.... House Bill 292 requires officers to take *blood and breath specimens* at the scene of a traffic accident where someone has been seriously injured. This requirement will raise the average blood alcohol content (BAC) testing so that Texas can draw down federal funds.
>
> * * *

**3.** The 1993, 1995, and 1997 amendments and bill analyses did not provide any additional

House Bill 292 amends Section 724.012 of the Transportation Code by expanding the instances where a blood alcohol content analysis is required. In addition to fatal traffic accidents, House Bill 292 requires *a blood alcohol specimen* be taken if an individual other than the person who caused the accident has suffered serious bodily injury.

House Comm. on Law Enforcement, Bill Analysis, Tex. H.B. 292, 78th Leg., R.S. (2003) (emphasis added). Although we agree the circumstances surrounding the enacting and amending of section 724.012(b), along with the stated purposes, weigh in favor of interpreting "a specimen" to encompass more than one, we find little additional help for the State's position. The State argues that the 2003 amendment focused on raising the amount of testing to increase the receipt of federal funds. *Id.* However, the Legislature sought to increase testing by providing an additional factual scenario for when an officer was required to take a breath or blood specimen; neither the amendment nor the bill analysis suggest that the Legislature intended to address the issue at hand.

The State next points to the Legislature's use of "specimens" and "specimen" in the 2003 bill analysis, as suggesting that no limit was intended on the number of specimens taken. *Id.* The State also relies on section 311.012(b) of the Code Construction Act which provides that "[t]he singular includes the plural and the plural includes the singular." Tex. Gov't Code Ann. § 311.012(b) (Vernon 2005). The State's argument and position, however, disregard the plain language set forth in section 724.012. Specifically, the State's

insight into the issue.

position dismisses the Legislature's use of the phrase "one or more specimens" in subsection (a) of section 724.012. TEX. TRANSP. CODE ANN. § 724.012(a) (Vernon Supp.2005) (stating that "*one or more specimens* of a person's breath or blood may be taken ...") (emphasis added). The State's argument begs the question of why the Legislature would make a distinction between subsections (a) and (b) by using "one or more specimens" in (a) and "a specimen" twice in (b). If the Legislature intended "a specimen" to encompass the plural form, they could have used "a specimen" throughout chapter 724 and relied on section 311.012(a) of the Code Construction Act to avoid the singular/plural debate. *See* TEX. GOV'T CODE ANN. § 311.012(a) (Vernon 2005) (providing that the singular includes the plural and the plural includes the singular). Because the Legislature chose to make a distinction between subsections (a) and (b), accepting the State's argument would render the use of "one or more" in subsection (a) superfluous. *Id.* § 311.023(5) (stating that a court may consider the consequences of a particular construction).

We are constrained from simply dismissing this language as suggested by the State's position. *Badgett v. State*, 42 S.W.3d 136, 139 (Tex.Crim.App.2001). That result would violate the cardinal rule of statutory construction that each word, phrase, clause, and sentence should be given effect so that no part is to be construed as void or redundant. *Id.* It would run contrary to the presumptions that an "entire statute is intended to be effective" and that every word in a statute has been used for a purpose. TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005); *Whitelaw v. State*, 29 S.W.3d 129, 131 (Tex.Crim.App. 2000). Further, we must presume that if the Legislature did not use words in a statute, it excluded those words for a reason. *Timmons v. State*, 952 S.W.2d 891,

892 (Tex.App.-Dallas 1997, no pet.). Thus, we must give effect to the Legislature's act of not using "one or more specimens" in subsection (b), as it did in subsection (a).

A reasonable explanation for the distinction rests in the application of each subsection. Because subsection (a) applies in deemed consent situations, it is reasonable to assume that allowing for more than one specimen would not be overly intrusive to the consenting individual. *See* TEX. TRANSP. CODE ANN. § 724.012(a) (Vernon Supp.2005). Subsection (b), though, applies when the person *refuses* to provide a specimen, and allowing for more than one specimen here would be overly intrusive to the non-consenting individual. *See id.* § 724.012(b); *see also Skinner v. Ry. Labor Executive's Ass'n*, 489 U.S. 602, 616, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989) (recognizing that taking bodily fluids implicates one's privacy interests); *see Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966) (recognizing that drawing one's blood constitutes a "search" under the Fourth Amendment). This interpretation of limiting the number of specimens based on consent and non-consent is a reasonable construction that gives effect to every word in the statute. *See* TEX. GOV'T CODE ANN. § 311.021(2), (3) (Vernon 2005) (stating that it is presumed that the entire statute is intended to be effective and that a just and reasonable result is intended). It also abides by the cardinal rule of construction that every word or phrase should be given effect so that no part is rendered void or redundant. *Badgett*, 42 S.W.3d at 139. Absent a clearer indication by the Legislature regarding the number of specimens that can be taken in non-consensual cases, we decline the request to expand the plain language of subsection (b) and dismiss the language of subsection (a) as superfluous.

We conclude that "a specimen" in subsection (b) means one specimen. Thus, because the second specimen was obtained in violation of section 724.012(b) of the Texas Transportation Code, the trial court properly granted appellant's motion to suppress. We overrule appellant's third issue.

## Continuation

■ In its fourth issue, the State contends the second drawing of blood was a continuation of the initial blood sample, precluding the need for additional authorization for the second blood sample. Appellee claims the State waived this argument as well by failing to raise it at the trial court. We disagree with appellee. The State explicitly argued that the second blood sample was not a separate search from the first blood sample, but merely a continuation of the first search. Thus, the State made its argument with sufficient specificity to make the trial court aware under Rule 33.1. *See* Tex.R.App. P. 33.1(a)(1)(A).

The State relies on a number of cases for its argument that the second blood sample was merely a continuation of the first blood sample. *United States v. Squillacote,* 221 F.3d 542, 557–58 (4th Cir.2000); *United States v. Gerber,* 994 F.2d 1556, 1558–59 (11th Cir.1993); *United States v. Kaplan,* 895 F.2d 618, 623 (9th Cir.1990); *United States v. Carter,* 854 F.2d 1102, 1107 (8th Cir.1988); *United States v. Bowling,* 351 F.2d 236, 240–41 (6th Cir. 1965); *Morrison v. State,* 508 S.W.2d 827, 829 (Tex.Crim.App.1974); *Brown v. State,* 475 S.W.2d 938, 950 (Tex.Crim.App.1972) *overruled on other grounds by Bradford v. State,* 608 S.W.2d 918 (Tex.Crim.App. 1980). In each of these cases, the initial searches were pursuant to either valid search warrants or valid consents, and each subsequent search was upheld as val-

id based on the grounds that allowed the first search. *Squillacote,* 221 F.3d at 557–58 (upholding subsequent searches based on valid warrant from initial search); *Gerber,* 994 F.2d at 1558–59 (same); *Kaplan,* 895 F.2d at 623 (same); *Carter,* 854 F.2d at 1107 (same); *Bowling,* 351 F.2d at 240–41 (same); *Morrison,* 508 S.W.2d at 829 (same); *Brown,* 475 S.W.2d at 950 (same). The overriding theme in these "continuing search" cases is that each subsequent search is upheld on the *same* grounds that lawfully permitted the initial search. Thus, if the initial search was based on consent, the court found that that consent carried over to the second search, and if the initial search was based on a warrant, the court found that that warrant carried over to the second search. *Squillacote,* 221 F.3d at 557–58; *Gerber,* 994 F.2d at 1558–59; *Kaplan,* 895 F.2d at 623; *Carter,* 854 F.2d at 1107; *Bowling,* 351 F.2d at 240–41; *Morrison,* 508 S.W.2d at 829; *Brown,* 475 S.W.2d at 950. The present case does not fit within these confines. The State justifies the first blood sample based on section 724.012(b) of the Transportation Code and seeks to validate the second blood sample on exigent circumstances. If we were to apply the "continuation search" theory espoused in the cases above, we would have to find that the second blood sample was valid based on the *same* grounds that validated the first blood sample—section 724.012(b). Because the State relies on exigent circumstances to justify the second search, a ground different from the initial blood sample, we conclude that the "continuation search" theory is not applicable here. We overrule the State's fourth issue.

## Conclusion

We conclude that the State waived its first two issues for review for failing to raise them with the trial court. Additionally, because we interpret section

724.012(b) of the Transportation Code to allow for the taking of one specimen, we conclude that the trial court properly granted appellant's motion to suppress. Finally, the continuation search theory is not applicable to the present case. Accordingly, we affirm the judgment of the trial court.