Opinion issued June 8, 2006



     
 
 
 
 
 
 
 
In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00558-CR
 

 
 
THE STATE OF TEXAS, Appellant
 
V.
 
NANCY N. NEESLEY, Appellee
 
 

 
 
On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1002222
 

 
 
OPINION
           The State charged appellee, Nancy N. Neesley, with intoxication manslaughter. 
Appellee filed a motion to suppress contending that a second specimen of appellee’s
blood was taken in violation of her statutory and constitutional guarantees under the
Fourth and Fourteenth Amendments to the U.S. Constitution, article 1 section 9 of the
Texas constitution, chapters 14 and 15 of the Texas Code of Criminal Procedure, and
chapter 724 of the Texas Transportation Code. The trial court granted appellee’s
motion to suppress the second blood specimen under chapter 724 of the Transportation
Code, and the State appeals.
           The State presents four issues for review: (1) probable cause and exigent
circumstances authorized the second drawing of appellee’s blood without a warrant
and without additional statutory compliance; (2) the implied consent statute is not
applicable because appellee’s blood was drawn primarily for treatment purposes; (3)
section 724.012(b) of the Transportation Code (implied consent statute) allows for the
taking of multiple specimens to obtain a “usable” specimen; and (4) the second
drawing of blood was a continuation of the initial blood sample, precluding the need
for additional authorization for the second blood sample. We conclude (1) the State
waived its first two issues for review; (2) section 724.012(b) allows for the taking of
a single specimen; and (3) the continuation-search theory is not applicable. We affirm.
Background
           On July 26, 2004, appellee was involved in a head-on vehicle collision with
Cynthia Perez. Detective Anders, an accident investigator with the Harris County
Sheriff’s Department, spoke with a witness who claimed that appellee swerved into
Perez’s lane. The witness stated he was traveling northbound in front of Perez’s
vehicle when appellee’s southbound vehicle veered into his and Perez’s lane, causing
him to swerve to the right to avoid a collision. The witness saw appellee’s vehicle
continue south in the northbound lane and collide with Perez’s vehicle. Detective
Anders then spoke briefly with appellee to ascertain her identity. Although appellee
had an oxygen mask over her face, Detective Anders detected a “moderate” odor of
alcohol. Thinking that alcohol may have factored into the accident, Detective Anders
sought to verify the witness’s claims that appellee veered into oncoming traffic. 
Detective Anders verified this information when he determined that the point of impact
occurred one foot inside Perez’s lane. He then decided that appellee’s blood needed
to be analyzed to determine whether appellee was intoxicated. 
           While appellee was transported to the hospital, rescue workers were still trying
to free Perez from her vehicle. The collision had trapped Perez behind her steering
wheel, and rescue workers had to use the jaws of life to remove Perez. When the
workers cut Perez free and relieved the pressure from her lower extremities, she went
into cardiac arrest and died at the scene. 
           Deputies Marines and Hernandez were assigned to handle appellee’s blood
sampling. Because both deputies noticed an odor of alcohol while speaking with
appellee, Deputy Hernandez performed a horizontal gaze nystagmus test. Hernandez
found all six clues of impairment


 and shared those observations with Deputy Marines. 
Deputy Marines then read appellee the statutory warnings form regarding breath and
blood sampling, but appellee refused to provide a sample. Deputy Marines next filled
out a mandatory blood draw form. 
           Around 8:30 p.m., a registered nurse took blood samples from appellee’s left
arm for treatment purposes and for Deputies Marines and Hernandez. Because an
intravenous line with a saline solution had been attached to appellee’s left wrist and the
blood was taken a few inches “downstream,” the first blood samples were
contaminated or diluted with saline solution. Approximately 50 minutes later, at 9:25
p.m., Deputy Marines had a second blood sample taken from the right arm, but he did
not request appellant’s permission to take the second sample, did not have consent, and
did not have a warrant. Appellee filed a motion to suppress this second blood sample,
and the trial court granted that motion.
WaiverRegarding the State’s first issue, appellee contends the State waived the
argument by failing to raise it with the trial court below. Appellee cites Hailey v. State,
87 S.W.3d 118, 122 (Tex. Crim. App. 2002) for the proposition that an appellate court
may not reverse a trial court on a theory not presented to the trial court. The State
contends that, under Rule 103(a)(2) of the Texas Rules of Evidence, when a trial court
excludes evidence, the losing party must merely make the substance of the evidence
known to the trial court in order to appeal error; thus, the State argues that it has not
waived the argument. 
           The Court of Criminal Appeals addressed a situation similar to ours in State v.
Mercado, 972 S.W.2d 75 (Tex. Crim. App. 1998). In Mercado, the trial court granted
Mercado’s motion to suppress cocaine found in his car after a search of a closed bag. 
Id. at 76. On appeal, the State argued for the first time that the search was a valid
search incident to arrest. Id. The court held that “ordinary notions of procedural
default should apply equally to the defendant and the State.” Id. at 78. Thus, where
the “State is a party appealing, the basic principle of appellate jurisprudence that points
not argued at trial are deemed to be waived applies equally to the State and the
defense.” Id. Here, the State attempts to limit the holding of Mercado to situations
that involve the Fourth Amendment. The State argues that, because appellee contends
the second blood sample was impermissible regardless of the application of the Fourth
Amendment, Mercado is inapplicable. We disagree that Mercado should be so limited.
           In Martinez v. State, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002), the Court of
Criminal Appeals recognized an expansive reading of Mercado and did not limit its
application to Fourth Amendment cases:
As this Court stated in State v. Mercado, under [Texas Rule of Appellate
Procedure 33.1], the issue is not whether the appealing party is the State
or the defendant or whether the trial court’s ruling is legally “correct” in
every sense, but whether the complaining party on appeal brought to the
trial court’s attention the very complaint that party is now making on
appeal. This “raise it or waive it” forfeiture rule applies equally to goose
and gander, State and defendant.
 
(footnotes omitted). Because the State did not present its first issue at the trial court,
we conclude it waived that argument on appeal. Id.
           In its second issue, the State contends the second blood sample was admissible
because it was taken for treatment purposes. Appellee responds again that the State
waived this argument for failing to present this to the trial court. Texas Rule of
Appellate Procedure 33.1 requires complaining parties to set forth the grounds for their
complaint with “sufficient specificity to make the trial court aware of the complaint.” 
Tex. R. App. P. 33.1(a)(1)(A). The State argues it preserved error by pointing to the
italicized language below in its closing statement at the suppression hearing:
The State’s argument is that the second blood draw is reliable and
admissible because it’s taken from the other arm, the saline does not
effect [sic] it. How do we know that? We know it from the hospital
because [Defense Counsel] admitted Defense Exhibit C that says the
hospital sent it back, there’s too much saline in your first draw, retake it. 
We know from the medical records that are in the Court’s file they never
came back and Nurse Pope testified they never came back to the lab on
the second draw and said there was a problem with it. They used it.
 
In its brief, the State admits that “while the argument was not as well developed as it
was on appeal, the trial court was informed that the blood was not merely requested by
the peace officers.” However, the trial court’s mere awareness of this fact does not
suffice under Rule 33.1. This language, in context, fails to show that the State relied
on this as an argument to support the introduction of the second blood sample. The
language does not meet Rule 33.1’s sufficient specificity requirement; thus, we
conclude the State waived this argument. Id.; Martinez, 91 S.W.3d at 336. We
overrule the State’s second issue.
Implied Consent Statute
           In its third issue, the State contends the implied consent statute (chapter 724 of
the Transportation Code) allows for the taking of multiple specimens to obtain a
“usable” specimen. The pertinent parts of section 724.012 provide as follows:
(a) one or more specimens of a person’s breath or blood may be taken if
the person is arrested and at the request of a peace officer having
reasonable grounds to believe the person:
(1) while intoxicated was operating a motor vehicle in a public
place, or a watercraft; or
(2) was in violation of Section 106.041, Alcoholic Beverage Code.
(b) A peace officer shall require the taking of a specimen of the person’s
breath or blood if:
(1) the officer arrests the person for an offense under Chapter 49,
Penal Code, involving the operation of a motor vehicle or a
watercraft;
(2) the person was the operator of a motor vehicle or a watercraft
involved in an accident that the officer reasonably believes
occurred as a result of the offense;
(3) at the time of the arrest the officer reasonably believes that as
a direct result of the accident:
(A) any individual has died or will die; or
(B) an individual other than the person has suffered serious
bodily injury; and
(4) the person refuses the officer’s request to submit to the taking
of a specimen voluntarily.
 
Tex. Transp. Code Ann. § 724.012 (a)–(b) (Vernon Supp. 2005) (emphasis added). 
Because this is a refusal of consent case, subsection (b) applies. Id. Once the State
established the four elements of subsection (b) for the first blood sample, the State
contends that it could take the second blood sample without again complying with the
requirements because subsection (b) allows for the drawing of multiple specimens. 
Appellee counters that the plain language of subsection (b) allows for the drawing of
“a specimen,” not multiple specimens.
           Whether subsection (b) allows for the drawing of multiple specimens is an issue
of first impression.


 We begin our analysis by observing that the Transportation Code
has its own rule guiding construction of its provisions. Allen v. State, 11 S.W.3d 474,
476 (Tex. App.—Houston [1st Dist.] 2000), aff’d, 48 S.W.3d 775 (Tex. Crim. App.
2001). Section 1.002 provides that “[c]hapter 311, Government Code (Code
Construction Act), applies to the construction of each provision in this code except as
otherwise expressly provided by this code.” Tex. Transp. Code Ann. § 1.002
(Vernon 1999). This poses a potential conflict with the leading case on statutory
construction from the Court of Criminal Appeals. See Boykin v. State, 818 S.W.2d
782, 786 (Tex. Crim. App. 1991) (establishing the “plain language” approach that
limits consideration to the text of the statute unless it is ambiguous or leads to absurd
results). The Code Construction Act allows consideration of extra-textual factors
without requiring ambiguity in the text of the statute. See Tex. Gov’t Code Ann.
§ 311.023 (Vernon 2005). We can easily avoid the conflict by resorting to Lanford v.
Fourteenth Court of Appeals, 847 S.W.2d 581, 587 (Tex. Crim. App. 1993), in which
the Court of Criminal Appeals eviscerated its Boykin rule by finding ambiguity when
the parties took polar opposite interpretations of the text. See L.B. Foster Co. v. State,
106 S.W.3d 194, 203 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d); Allen, 11
S.W.3d at 476. Because the parties take polar opposite positions here, we are free to
apply the Code Construction Act in resolving the issue.
           Section 311.023 of the Code Construction Act provides for construction aids
that may be considered: (1) the object sought to be attained, (2) circumstances under
which the statute was enacted, (3) legislative history, (4) common law or former
statutory provisions, including laws on the same or similar subjects, (5) consequences
of a particular construction, (6) administrative construction of the statute, and (7) title
(caption), preamble, and emergency provision. Tex. Gov’t Code Ann. § 311.023
(Vernon 2005). 
           When looking to the first four factors, we see that subsection (b) of 724.012
traces its roots to Senate Bill 1 of the 68th Legislature. Act effective January 1, 1984,
68th Leg., R.S., ch. 303, 1983 Tex. Gen. Laws 1568, 1584 (amended 1993, 1995,
1997, 2003).


 This original version required the taking of “a specimen” as well, but
limited such a taking to when a person had died or would die as a result of the accident. 
Id. The stated purpose of the original bill was to “save lives and decrease the number
of casualties caused by drunken drivers” by stiffening the penalties for DWI
convictions. House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. S.B.
1, 68th Leg., R.S. (1983). In 2003, the Legislature carried over the “a specimen”
language, but expanded subsection (b) to require that “a specimen” also be taken if a
person has suffered serious bodily injury. Act effective September 1, 2003, 78th Leg.,
R.S., ch. 422, 2003 Tex. Gen. Laws 1669. The State relies heavily on this bill analysis
which provides the following purpose and backdrop against which this bill was
amended:
More Texans are killed in alcohol-related crashes than in any other state. 
[sic] Texas has the nation’s worst problem with drunk driving in terms of
total deaths and injuries, with 50% of traffic fatalities involving
alcohol. . . . House Bill 292 requires officers to take blood and breath
specimens at the scene of a traffic accident where someone has been
seriously injured. This requirement will raise the average blood alcohol
content (BAC) testing so that Texas can draw down federal funds.
***
House Bill 292 amends Section 724.012 of the Transportation Code by
expanding the instances where a blood alcohol content analysis is
required. In addition to fatal traffic accidents, House Bill 292 requires a
blood alcohol specimen be taken if an individual other than the person
who caused the accident has suffered serious bodily injury.
 
House Comm. on Law Enforcement, Bill Analysis, Tex. H.B. 292, 78th Leg.,
R.S. (2003) (emphasis added). Although we agree the circumstances surrounding the
enacting and amending of section 724.012(b), along with the stated purposes, weigh
in favor of interpreting “a specimen” to encompass more than one, we find little
additional help for the State’s position. The State argues that the 2003 amendment
focused on raising the amount of testing to increase the receipt of federal funds. Id. 
However, the Legislature sought to increase testing by providing an additional factual
scenario for when an officer was required to take a breath or blood specimen; neither
the amendment nor the bill analysis suggest that the Legislature intended to address the
issue at hand.
           The State next points to the Legislature’s use of “specimens” and “specimen”
in the 2003 bill analysis, as suggesting that no limit was intended on the number of
specimens taken. Id. The State also relies on section 311.012(b) of the Code
Construction Act which provides that “[t]he singular includes the plural and the plural
includes the singular.” Tex. Gov’t Code Ann. § 311.012(b) (Vernon 2005). The
State’s argument and position, however, disregard the plain language set forth in
section 724.012. Specifically, the State’s position dismisses the Legislature’s use of
the phrase “one or more specimens” in subsection (a) of section 724.012. Tex.
Transp. Code Ann. § 724.012(a) (Vernon Supp. 2005) (stating that “one or more
specimens of a person’s breath or blood may be taken . . .”) (emphasis added). The
State’s argument begs the question of why the Legislature would make a distinction
between subsections (a) and (b) by using “one or more specimens” in (a) and “a
specimen” twice in (b). If the Legislature intended “a specimen” to encompass the
plural form, they could have used “a specimen” throughout chapter 724 and relied on
section 311.012(a) of the Code Construction Act to avoid the singular/plural debate. 
See Tex. Gov’t Code Ann. § 311.012(a) (Vernon 2005) (providing that the singular
includes the plural and the plural includes the singular). Because the Legislature chose
to make a distinction between subsections (a) and (b), accepting the State’s argument
would render the use of “one or more” in subsection (a) superfluous. Id. § 311.023(5)
(stating that a court may consider the consequences of a particular construction). 
           We are constrained from simply dismissing this language as suggested by the
State’s position. Badgett v. State, 42 S.W.3d 136, 139 (Tex. Crim. App. 2001). That
result would violate the cardinal rule of statutory construction that each word, phrase,
clause, and sentence should be given effect so that no part is to be construed as void
or redundant. Id. It would run contrary to the presumptions that an “entire statute is
intended to be effective” and that every word in a statute has been used for a purpose. 
Tex. Gov’t Code Ann. § 311.021(2) (Vernon 2005); Whitelaw v. State, 29 S.W.3d
129, 131 (Tex. Crim. App. 2000). Further, we must presume that if the Legislature did
not use words in a statute, it excluded those words for a reason. Timmons v. State, 952
S.W.2d 891, 892 (Tex. App.—Dallas 1997, no pet.). Thus, we must give effect to the
Legislature’s act of not using “one or more specimens” in subsection (b), as it did in
subsection (a).
           A reasonable explanation for the distinction rests in the application of each
subsection. Because subsection (a) applies in deemed consent situations, it is
reasonable to assume that allowing for more than one specimen would not be overly
intrusive to the consenting individual. See Tex. Transp. Code Ann. § 724.012(a)
(Vernon Supp. 2005). Subsection (b), though, applies when the person refuses to
provide a specimen, and allowing for more than one specimen here would be overly
intrusive to the non-consenting individual. See id. § 724.012(b); see also Skinner v.
Ry. Labor Executive’s Ass’n, 489 U.S. 602, 616, 109 S. Ct. 1402, 1413 (1989)
(recognizing that taking bodily fluids implicates one’s privacy interests); see
Schmerber v. California, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834 (1966) (recognizing
that drawing one’s blood constitutes a “search” under the Fourth Amendment). This
interpretation of limiting the number of specimens based on consent and non-consent
is a reasonable construction that gives effect to every word in the statute. See Tex.
Gov’t Code Ann. § 311.021(2), (3) (Vernon 2005) (stating that it is presumed that the
entire statute is intended to be effective and that a just and reasonable result is
intended). It also abides by the cardinal rule of construction that every word or phrase
should be given effect so that no part is rendered void or redundant. Badgett, 42
S.W.3d at 139. Absent a clearer indication by the Legislature regarding the number
of specimens that can be taken in non-consensual cases, we decline the request to
expand the plain language of subsection (b) and dismiss the language of subsection (a)
as superfluous.
           We conclude that “a specimen” in subsection (b) means one specimen. Thus,
because the second specimen was obtained in violation of section 724.012(b) of the
Texas Transportation Code, the trial court properly granted appellant’s motion to
suppress. We overrule appellant’s third issue.
Continuation
           In its fourth issue, the State contends the second drawing of blood was a
continuation of the initial blood sample, precluding the need for additional
authorization for the second blood sample. Appellee claims the State waived this
argument as well by failing to raise it at the trial court. We disagree with appellee. 
The State explicitly argued that the second blood sample was not a separate search
from the first blood sample, but merely a continuation of the first search. Thus, the
State made its argument with sufficient specificity to make the trial court aware under
Rule 33.1. See Tex. R. App. P. 33.1(a)(1)(A).
           The State relies on a number of cases for its argument that the second blood
sample was merely a continuation of the first blood sample. United States v.
Squillacote, 221 F.3d 542, 557–58 (4th Cir. 2000); United States v. Gerber, 994 F.2d
1556, 1558–59 (11th Cir. 1993); United States v. Kaplan, 895 F.2d 618, 623 (9th Cir.
1990); United States v. Carter, 854 F.2d 1102, 1107 (8th Cir. 1988); United States v.
Bowling, 351 F.2d 236, 240–41 (6th Cir. 1965); Morrison v. State, 508 S.W.2d 827,
829 (Tex. Crim. App. 1974); Brown v. State, 475 S.W.2d 938, 950 (Tex. Crim. App.
1972) overruled on other grounds by Bradford v. State, 608 S.W.2d 918 (Tex. Crim.
App. 1980). In each of these cases, the initial searches were pursuant to either valid
search warrants or valid consents, and each subsequent search was upheld as valid
based on the grounds that allowed the first search. Squillacote, 221 F.3d at 557–58
(upholding subsequent searches based on valid warrant from initial search); Gerber,
994 F.2d at 1558–59 (same); Kaplan, 895 F.2d at 623 (same); Carter, 854 F.2d at 1107
(same); Bowling, 351 F.2d at 240–41 (same); Morrison, 508 S.W.2d at 829 (same);
Brown, 475 S.W.2d at 950 (same). The overriding theme in these “continuing search”
cases is that each subsequent search is upheld on the same grounds that lawfully
permitted the initial search. Thus, if the initial search was based on consent, the court
found that that consent carried over to the second search, and if the initial search was
based on a warrant, the court found that that warrant carried over to the second search. 
Squillacote, 221 F.3d at 557–58; Gerber, 994 F.2d at 1558–59; Kaplan, 895 F.2d at
623; Carter, 854 F.2d at 1107; Bowling, 351 F.2d at 240–41; Morrison, 508 S.W.2d
at 829; Brown, 475 S.W.2d at 950. The present case does not fit within these confines. 
The State justifies the first blood sample based on section 724.012(b) of the
Transportation Code and seeks to validate the second blood sample on exigent
circumstances. If we were to apply the “continuation search” theory espoused in the
cases above, we would have to find that the second blood sample was valid based on
the same grounds that validated the first blood sample—section 724.012(b). Because
the State relies on exigent circumstances to justify the second search, a ground
different from the initial blood sample, we conclude that the “continuation search”
theory is not applicable here. We overrule the State’s fourth issue.
ConclusionWe conclude that the State waived its first two issues for review for failing to
raise them with the trial court. Additionally, because we interpret section 724.012(b)
of the Transportation Code to allow for the taking of one specimen, we conclude that
the trial court properly granted appellant’s motion to suppress. Finally, the
continuation search theory is not applicable to the present case. Accordingly, we
affirm the judgment of the trial court.
 
 
                                                                  Sherry Radack
                                                                  Chief Justice
 
Panel consists of Chief Justice Radack and Justices Taft and Nuchia.
Publish. Tex. R. App. P. 47.2(b).