IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1396-06






THE STATE OF TEXAS



v.



NANCY N. NEESLEY, Appellee


 




ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Price, J., delivered the opinion of the Court in which Meyers, Womack,
Keasler, Holcomb and Cochran, JJ., joined. Keller, P.J., filed a concurring opinion
in which Hervey, J., joined. Johnson, J., filed a dissenting opinion.

 

O P I N I O N



 This case addresses the questions of how the term "specimen" should be interpreted in
the context of § 724.012(b) of the Texas Transportation Code and how many specimens the
statute permits to be taken. We hold that specimen should be construed to mean a usable
sample, and that one and only one specimen (as so defined) may be taken. Accordingly, we
reverse the judgment of the court of appeals, and remand to the trial court for further
proceedings consistent with this opinion.

THE FACTS AND PROCEDURAL POSTURE


 On July 26, 2004, the appellee was involved in a head-on automobile collision with
Cynthia Perez. Deputy Leo Anders, an accident investigator with the Harris County Sheriff's
Department, testified that he spoke with a witness who claimed that the appellee veered into
Perez's lane. The witness told Anders that he was traveling northbound on Boudreaux Road
directly in front of Perez's vehicle when the appellee, who was traveling southbound, veered
into the northbound lane. The witness said that, after he swerved to the right to avoid a
collision with the appellee, the appellee continued driving partially in the northbound lane and
that as the witness watched her in his rearview mirror, he saw her collide with Perez.

 When Anders spoke to the appellee, he detected a "moderate" odor of alcohol. Thinking
that alcohol may have contributed to the accident, Anders sought to verify the witness's claim
that the appellee veered into oncoming traffic. Meanwhile, the appellee was transported to
Hermann Hospital for treatment of her injuries resulting from the accident. After investigating
the scene of the accident, Anders determined that the collision occurred one foot inside of
Perez's lane. At that point, Anders asked the chief paramedic about Perez's medical condition.
The paramedic replied that Perez was critically injured and still trapped behind the steering
wheel of her vehicle. Rescue workers attempted to free Perez from the wreckage, but during
the rescue attempt she went into cardiac arrest and died at the scene. Anders contacted
Deputies Marines and Hernandez, told them that the appellee's blood would have to be analyzed
at the hospital in order to determine whether the appellee was intoxicated, and assigned them
to handle the blood sampling.

 At the hospital, Deputy Hernandez spoke with the appellee and also detected an odor
of alcohol. He then performed a field sobriety test, on the basis of which both he and Deputy
Marines concluded that the appellee was probably intoxicated. Marines read the appellee the
statutory warning form regarding breath and blood sampling, but the appellee refused to
provide a sample. (1) Marines filled out the mandatory blood draw form, and at 8:35 p.m., a
registered nurse drew a blood sample from the appellee's left arm. (2) However, at the time that
the blood was drawn, the appellee had an intravenous line of saline solution attached to her left
wrist. This resulted in the contamination of the blood sample, and at 9:35 p.m., Marines had
the nurse draw a second sample of blood. The appellee filed a motion to suppress this second
sample and the trial court granted that motion. The State appealed from that judgment. (3)

 Subsection (b) of § 724.012 of the Texas Transportation Code requires that a peace
officer take a blood or breath specimen in cases where a person was killed or has suffered
serious bodily injury as a result of a car accident. (4) On appeal to the First Court of Appeals, the
State argued, inter alia, that (1) the statute should be construed to mean at least one "usable"
breath or blood specimen; and (2) drawing additional blood from the appellee was merely an
extension of the initial blood draw, and no additional authorization was required for the
additional draw. In response to argument (1), the court of appeals determined that "a
specimen," as used in section 724.012(b), means a single specimen, regardless of whether or
not the specimen is usable; and in response to argument (2), the court determined that the
second blood draw was not a continuation of the initial blood draw because the grounds
justifying each drawing of blood were different. Consequently, the court of appeals affirmed
the judgment of the trial court, holding that the evidence was properly excluded. (5) We granted
the State's petition for discretionary review to address whether the court of appeals properly
construed § 724.012(b), as this issue presents an important question of state law that is likely
to recur in future cases of this sort. (6)



ANALYSIS

Statutory Construction

 Section 724.012 of the Texas Transportation Code provides the following:

 § 724.012. Taking of Specimen

 (a) One or more specimens of a person's breath or blood may be taken if the
person is arrested and at the request of a peace officer having reasonable
grounds to believe the person:


 (1) while intoxicated was operating a motor vehicle in a public
place, or a watercraft; or 


 (2) was in violation of Section 106.041, Alcoholic Beverage
Code.


 (b) A peace officer shall require the taking of a specimen of the person's breath
or blood if:


 (1) the officer arrests the person for an offense under Chapter 49,
Penal Code, involving the operation of a motor vehicle or a
watercraft;


 (2) the person was the operator of a motor vehicle or a watercraft
involved in an accident that the officer reasonably believes
occurred as a result of the offense; 


 (3) at the time of the arrest the officer reasonably believes that
as a direct result of the accident:


 (A) any individual has died or will die; or


 (B) an individual other than the person has suffered
serious bodily injury; and


 (4) the person refuses the officer's request to submit to the taking
of a specimen voluntarily.


 (c) The peace officer shall designate the type of specimen to be taken.


 (d) In this section, "serious bodily injury" has the meaning assigned by Section
1.07, Penal Code. (7)


 In its first ground for review, the State argues that the court of appeals erred in holding
that the statute's requirement that officers take "a specimen" was actually a limitation
prohibiting officers from taking more than one specimen even where the first specimen was
not usable. Our role in interpreting the wording of § 724.012(b) is limited by the holding in
Boykin v. State, (8) which maintains: 

 If the plain language of a statute would lead to absurd results, or if the
language is not plain but rather ambiguous, then and only then, out of absolute
necessity, is it constitutionally permissible for a court to consider, in arriving
at a sensible interpretation, such extratextual factors as executive or
administrative interpretations of the statute or legislative history. (9)


Thus, the first step of our analysis is to determine whether the plain language of § 724.012 is
either ambiguous or it leads to absurd results.

 In the context of statutory construction, "ambiguity exists when a statute is capable of
being understood by reasonably well-informed persons in two or more different senses." (10) In
contrast, a statute is unambiguous where it "admits of no more than one meaning." (11) The
segment of § 724.012(b) that we are called upon to interpret reads that "a peace officer shall
require the taking of a specimen of the person's breath or blood." (12) The one thing that this
segment of the statute clearly and unambiguously provides is that, under certain prescribed
circumstances, a peace officer must take at least one specimen of the person's breath or
blood. But it is unclear from the face of § 724.012(b), at least read in isolation, how many
specimens it permits to be taken.

How Many Specimens Are Permitted?

 With respect to the question of how many specimens are permitted, the § 724.012(b),
by itself, could be interpreted to mean:


 Interpretation A: The taking of one and only one specimen is
permitted.


 


 Interpretation B: The taking of an unlimited number of specimens is
permitted (though constitutional concerns, such as due process, might
independently impose an upper limit).


 


 Interpretation C: The taking of as many specimens as are needed to
acquire a usable sample is permitted (again, within constitutional
bounds).



It might appear, then, that the statute is ambiguous with respect to this question, read in
isolation. However, reading § 724.012(b) in pari materia with the balance of Chapter 724,
Subchapter B ("Taking and Analysis of Specimen") of the Transportation Code, the seeming
ambiguity is resolved.

 Section 724.012(a) of the Transportation Code permits a peace officer to take "one or
more specimens" whenever he has reasonable grounds to believe a DWI offense has occurred. 
And the DWI suspect "is deemed to have consented" to the taking of "one or more specimens"
under Section 724.011 of the Transportation Code, the so-called "implied consent" statute. 
These provisions alone, however, cannot answer the question how many "specimens" a peace
officer is permitted to take under subsection (b) of Section 724.012, the provision that
requires that at least one specimen be taken under certain enumerated circumstances. The
reason for this is the operation of Section 724.013 of the Transportation Code. (13) Section
724.013 does not permit the taking of any specimens, except under the circumstances
enumerated in 724.012(b), if the suspect refuses to submit. Therefore, while Section
724.012(b) actually requires the taking of one specimen under the circumstances there
enumerated, reading that provision in combination with Sections 724.011, 724.012(a), and,
most importantly, 724.013, the statutory scheme as a whole clearly permits no more than the
one specimen that is required when the suspect refuses to submit.

 Accordingly, we hold that, even under the circumstances enumerated in § 724.012(b),
if the suspect refuses to submit to the taking of a specimen, the peace officer shall be limited
to taking only the one specimen that the subsection requires. But this does not wholly resolve
the issue before us.

What Does "Specimen" Mean?

 Nowhere in the statute is the word "specimen" defined. (14) Reasonably well-informed
persons could interpret it in more than one sense. For example:


 Interpretation 1: A specimen refers to any sample taken, regardless of
its content (e.g., A sample that is 99.99% saline and 0.01% blood is a
specimen of blood).




 Interpretation 2: A specimen refers to a pure sample. (e.g., Only a
sample that is 100% blood is a specimen of blood).


 


 Interpretation 3: A specimen refers to a sample containing a
substantial, but not necessarily usable, percentage of a particular material
(e.g., A sample that is 0.01% less pure than usable is a specimen).


 


 Interpretation 4: A specimen refers to a sample that is usable.



Since reasonably well informed persons could interpret the word "specimen" in any of these
different senses, we hold that the statute is ambiguous. Consequently, we are permitted, in
accordance with Boykin, to look to extratextual factors in order to arrive at a sensible
interpretation. Thus, the second step of our analysis is to determine which of the above
interpretations is best supported by extratextual factors.

 In relevant part, the Code Construction Acts provides that, in construing a statute,
whether or not the statute is ambiguous on its face, a court may consider among other matters,
the:

 (1) object sought to be attained;


 (2) circumstances under which the statute was enacted;


 (3) legislative history;


 * * *


 (5) consequences of a particular construction. (15)


In our analysis of how to interpret the term specimen as it is used in § 724.012, these
considerations weigh in favor of Interpretation 4, that specimen should be construed to mean
a usable sample. (16)

 Subsection (b) of § 724.012 can be traced back to Senate Bill 1 of the 68th
Legislature. (17) The object sought to be attained by this bill was to "save lives and decrease the
number of casualties caused by drunken drivers." (18) When signed into law in 1984, subsection
(b) originally required that a specimen be taken only in cases where a person had died or would
die as a result of the accident. In 2003, subsection (b) was amended to also require the taking
of a specimen in cases where a person suffered serious bodily injury as the result of the
accident. (19) The discussion surrounding this amendment focused on the fact that "Texas [had]
the nation's worst problem with drunk driving in terms of total deaths and injuries, with 50%
of traffic fatalities involving alcohol." (20)

 Each of the extratextual factors cited weigh in favor of interpreting "specimen" to mean
a usable sample. In order to decrease the number of casualties caused by drunk drivers, it is
necessary to first determine whether a driver is intoxicated. An unusable sample provides no
useful information to assist in making this determination. It is implausible that the Legislature
would have enacted a statute that requires a procedure as invasive as drawing a blood sample
unless that procedure was intended to result in a usable sample. Thus, both Interpretations 1
and 3, above, run contrary to legislative intent. Interpretation 2, on the other hand, applies too
strict of a standard which, aside from being practically unfeasible, also provides no information
in addition to that which could be acquired by testing any usable sample. Therefore, we find
that the most sensible interpretation of the term "specimen" is Interpretation 4, that is, to
construe "specimen" to mean a usable sample.

CONCLUSION

 We hold that in cases which satisfy the conditions for mandatory taking of a specimen
under § 724.012(b), a peace officer is required to take one specimen of breath or blood and
is permitted to take no more than one specimen. In these cases, "specimen" is to be construed
to mean a usable sample. The judgment of the court of appeals is reversed, and the cause is
remanded to the trial court for further proceedings consistent with this opinion.


Delivered: November 7, 2007

Publish

 
1. Form DIC-24, contained within the clerk's record, is the written component of the statutory
warning required in cases where a peace officer requests a voluntary blood or breath specimen from a
person. See Tex. Transp. Code Ann. § 724.015. 
2. Form THP-51, also contained within the clerk's record, is the form that allows a peace officer to
require that a hospital perform a mandatory blood drawing. See Tex. Transp. Code Ann. § 724.012(b).
3. The State is entitled to appeal an order of a court in a criminal case if the order grants a motion
to suppress evidence. See Tex. Code Crim. Proc. Ann. art. 44.01(a)(5). 
4. Tex. Transp. Code Ann. § 724.012(b).
5. State v. Neesley, 196 S.W.3d 356, 365 (Tex.App.- Houston [1st Dist.] 2006).
6. Tex. R. App. P. 66.3 (b). 
7. 

 Tex. Transp. Code Ann. § 724.012.
8. Boykin v. State, 818 S.W.2d 782 (Tex. Crim. App. 1991).
9. 

 Id. at 785-86.
10. 

 2A Norman J. Singer, Sutherland Statutory Construction § 45.02, at 6 (5th ed.1992). 
11. 

 Id.
12. 

 Tex. Transp. Code Ann. § 724.012 (emphasis added).
13. Tex. Transp. Code § 724.013 ("Except as provided by Section 724.012(b), a specimen may
not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer.")
14. While there are two sections within Chapter 724 of the Texas Transportation Code-

§ 724.016, titled "Breath Specimen," and § 724.017, titled "Blood Specimen"-neither of these sections
defines the term "specimen." Rather, these two sections address the procedural requirements of taking
breath and blood specimens. 
15. 

 Tex. Gov't Code Ann. § 311.023. 
16. Subsections (4), (6) and (7) of § 311.023 are not discussed because they do not provide any
relevant information with respect to the issue at bar.
17. 

 Act of January 1, 1984, 68th Leg., R.S., ch. 303, 1983 Tex. Gen. Laws 1568, 1584 (amended
1993, 1995, 1997, 2003).
18. House Comm. On Criminal Jurisprudence, Bill Analysis, Tex. S.B. 1, 68th Leg., R.S.
(1983). 
19. 

 Act of September 1, 2003, 78th Leg., R.S., ch. 422, 2003 Tex. Gen. Laws 1669.
20. House Comm. On Law Enforcement, Bill Analysis, Tex. H.B. 292, 78th Leg., R.S.
(2003).